A10A1268. A. M. BUCKLER & ASSOCIATES, INC. v. SANDERS.
(700 SE2d 701)

ELLINGTON, Judge.

In this garnishment action, A. M. Buckler & Associates, Inc. ("Buckler") appeals from an order of the Richmond County State Court that granted a traverse filed by "Joe Sanders d/b/a Sanders Golf."[1] Buckler contends that the trial court erred in finding that "Joe Sanders d/b/a Sanders Golf" is a legally recognizable entity separate and distinct from "C. R. Sanders, Inc.," that the garnishee, Augusta National, Inc., assented to the modification of a contract between the garnishee and C. R. Sanders, Inc., and that the traverse filed by "Joe Sanders d/b/a Sanders Golf" was timely filed. For the following reasons, we affirm.

Georgia's garnishment statutes, OCGA § 18-4-1 et seq., are "in derogation of the common law and, thus, must be strictly construed[.]" (Citation and punctuation omitted.) *Wachovia Bank of Ga. v. Unisys Finance Corp.*, 221 Ga. App. 471, 474 (471 SE2d 554)

---

[1] This Court granted Buckler's application for discretionary appeal. See OCGA § 5-6-35 (a) (4).

(1996). See also *Akridge v. Silva*, 298 Ga. App. 862, 865 (1) (681 SE2d 667) (2009) ("Garnishment is purely a statutory proceeding and will not be extended so as to reach money or property of the defendant not made subject thereto by statute.") (punctuation and footnote omitted). In a case such as this, in which a plaintiff has obtained a money judgment against a defendant, the plaintiff is entitled to file a garnishment action in a court which has jurisdiction over the garnishee, the person or entity which has in its possession money or property which belongs to the defendant and is subject to garnishment. OCGA §§ 18-4-20 (property subject to garnishment); 18-4-60 (judgment creditor's right to garnishment); 18-4-61 (court must have jurisdiction over garnishee); 18-4-82 (contents of answer of garnishee).

> A garnishment proceeding is an action between the plaintiff and the garnishee; but, at any time before a judgment is entered on the garnishee's answer or before money or other property subject to garnishment is distributed, the defendant may become a party to the garnishment for the purposes set out in Code Section 18-4-65[2] by filing a traverse to the plaintiff's affidavit stating that the affidavit is untrue or legally insufficient; and he shall be a party to all proceedings thereafter.

OCGA § 18-4-93. Further, under OCGA § 18-4-95,

> [a]t any time before judgment is entered on the garnishee's answer or money or other property subject to garnishment is distributed, any person may file a claim in writing under oath stating that he has a claim superior to that of the plaintiff to the money or other property in the hands of the garnishee subject to the process of garnishment; and the claimant shall be a party to all further proceedings upon the garnishment.

If a defendant or other claimant files a traverse or adverse claim in a garnishment proceeding, the trial court must conduct an evidentiary hearing to determine the rights of the parties to the money or other property at issue. OCGA § 18-4-93; *Akridge v. Silva*, 298 Ga. App. at 867 (4) (In a garnishment action, "[t]he question of owner-

---

[2] "When garnishment proceedings are based upon a judgment, the defendant, by traverse of the plaintiff's affidavit, may challenge the existence of the judgment or the amount claimed due thereon. The defendant may plead any other matter in bar of the judgment," except the validity of the judgment upon which a garnishment is based. OCGA § 18-4-65 (a), (b).

ship of the funds [is] one of fact for the [trial] court, as factfinder, to decide.") (footnote omitted). "On appeal of the judgment of a trial judge sitting without a jury, a judgment will not be disturbed if there is any evidence to sustain it." (Citations and punctuation omitted.) *Travelers Ins. Co. v. Trans State*, 172 Ga. App. 763, 765 (3) (324 SE2d 585) (1984).

The record in this case shows that C. R. Sanders, Inc. is a closely-held family corporation that constructs and renovates golf courses. Three brothers, Rob, Cole and Earl Sanders, are the corporation's sole shareholders. Their father, Joe Sanders, has served as a consultant to the corporation. In August 2008, Buckler, a supplier of golf course construction materials, obtained a judgment against the corporation in the amount of $117,735.41, plus post-judgment interest. When Buckler attempted to collect on the judgment, however, it discovered that the bank account of C. R. Sanders, Inc. had a negative balance, despite having had deposits totaling more than $280,000 in the three months since Buckler obtained the judgment.

Buckler then filed the instant garnishment action in Richmond County State Court, naming Augusta National, Inc. as the garnishee. Augusta National had contracted with C. R. Sanders, Inc. for golf course construction from 2004 through 2008. During that time, C. R. Sanders, Inc. had been designated a "qualified contractor" for Augusta National based upon the corporation's past performance, quality of work, and competitive bids. In May 2009, Augusta National awarded another construction contract to C. R. Sanders, Inc. and mailed the company a contract to be signed. When the company returned the contract to Augusta National, however, someone had crossed out all of the references to "C. R. Sanders, Inc." and had handwritten "Sanders Golf" next to them. Also, Cole Sanders had signed the contract as "COO" of "Sanders Golf." Before beginning work under the contract, Sanders Golf provided a certificate of liability insurance to Augusta National.

Even though Augusta National had received the modified contract and insurance certificate showing that "Sanders Golf" had replaced "C. R. Sanders, Inc." as its contractor, Augusta National still filed an answer in the instant garnishment action in which it stated that it had in its possession funds it owed to "C. R. Sanders, Inc.," in the amount of $32,719.80. Augusta National deposited the funds into the registry of the court.

On September 10, 2009, a claimant, "Earl Sanders d/b/a Sanders Golf," filed a traverse to the garnishment, seeking to become a party to the action and asserting a verified claim to the funds paid into the court by Augusta National. The same day, Augusta National filed an amended answer in the garnishment action which stated that an

YALE LAW LIBRARY

attorney representing "Earl Sanders of Sanders Golf," had notified it that "Sanders Golf" was a "sole proprietorship separate and distinct" from "C. R. Sanders, Inc." and was the entity that had contracted with Augusta National in 2009. The attorney, R. Michael Gailey, Jr., also notified Augusta National that the $32,719.80 it referred to in its original answer to the garnishment action was, in fact, payment for services provided by "Sanders Golf," not "C. R. Sanders, Inc.," and, thus, was not subject to garnishment. On November 9, 2009, however, before the trial court ruled on the first traverse, the same attorney filed *another* traverse and verified claim to the funds in the garnishment action on behalf of a different claimant, "Joe Sanders d/b/a Sanders Golf."

Finally, even though Augusta National had repeatedly received notice that the funds in the court's registry allegedly belonged to "Sanders Golf," it again stated in an "Answer of Continuing Garnishment" that it had in its possession funds it owed for services rendered by "C. R. Sanders, Inc.," specifically $24,249.80. Augusta National paid the additional funds into the registry of the court.

On November 24, 2009, the trial court conducted an evidentiary hearing on the garnishment petition and the traverse petitions to determine the proper party to receive the funds. Following the hearing, the court concluded that "Joe Sanders d/b/a Sanders Golf" was a separate entity from "C. R. Sanders, Inc.," that "Joe Sanders d/b/a Sanders Golf" — not "C. R. Sanders, Inc." — had contracted with Augusta National in 2009, that Augusta National had assented to the modification of the contract, and that Augusta National had accepted the performance of the contract by "Joe Sanders d/b/a Sanders Golf." Based upon these findings, the trial court granted the traverse filed by "Joe Sanders d/b/a Sanders Golf" and directed the court clerk to disburse the garnishment funds held in the court's registry to Joe Sanders. Buckler appeals from this ruling.

1. Buckler contends that the trial court erred in finding that Sanders Golf was a separate and distinct entity from C. R. Sanders, Inc., arguing that the evidence in the record is inconsistent and overwhelmingly demonstrates that the Sanderses are playing a business "shell game" to avoid the corporation's debt to Buckler. Specifically, Buckler points to evidence that, while performing work for Augusta National in 2009, Sanders Golf utilized the "same people, same trucks, [and] same equipment," had the same fax number, and had the same contact person (Earl Sanders) as C. R. Sanders, Inc. did when the corporation performed work for Augusta National under previous contracts.

As noted above, the trial court sits as trier of fact in a garnishment proceeding and, when reviewing the court's findings on appeal, this Court is not authorized to weigh the evidence, resolve conflicts

in the evidence, or judge the credibility of witnesses. Instead, we are bound by the court's findings as long as there is any evidence to support them.

Viewed from that perspective, the record shows that, in the fall of 2008, when Joe Sanders was 76 years old, he decided that he would like to get back into the business of building and maintaining golf courses, so he started a sole proprietorship that he named "Sanders Golf." Joe Sanders deposed that the company has its own tax identification number and liability insurance and that, although the company does not have any other officers and none of his sons own any part of the business, all three of his sons work for his company and are authorized to sign certain documents on the company's behalf.[3]

Given this evidence, we conclude that there is some evidence to support the court's finding that the sole proprietorship of "Joe Sanders d/b/a Sanders Golf" is a separate and distinct entity from "C. R. Sanders, Inc." Thus, we are bound by that conclusion, and this enumeration presents no reversible error.

2. Buckler claims that the trial court erred in determining that Augusta National assented to the substitution of "Sanders Golf" for "C. R. Sanders, Inc." as the contractor in 2009. In support of this contention, Buckler again points to conflicts in the evidence, as well as evidence that Sanders Golf had not been designated a qualified contractor for Augusta National and had not bid on a contract with the golf club in 2009. Based upon this evidence, Buckler argues that Augusta National representatives actually believed that the golf club had a contract with "C. R. Sanders, Inc." in 2009.

The evidence presented in support of the court's finding, however, included the deposition testimony of an Augusta National representative, who testified that Augusta National was aware that someone had changed the contractor's name on the 2009 contract from "C. R. Sanders, Inc." to "Sanders Golf"; that Augusta National had received a federal tax identification number for Sanders Golf; that Augusta National required Sanders Golf to provide a certificate of liability insurance before beginning work at the golf club; and that Augusta National had no business dealings with C. R. Sanders, Inc. during 2009. According to this representative, as long as Augusta National had the certificate of insurance from Sanders Golf and Earl Sanders was the contact person for the company, "[n]othing else was required."

---

[3] Even so, Joe Sanders also testified unequivocally that he – not his son, Earl – is the proper party to the garnishment action, despite the fact that Earl filed the initial traverse, representing himself as "Earl Sanders d/b/a Sanders Golf." Regarding that claim, because Earl Sanders did not pursue the claim in the court below and the trial court did not rule upon it, we conclude that it has been abandoned.

Another Augusta National representative agreed, testifying that, although he was aware that someone had changed the 2009 contract from "C. R. Sanders, Inc." to "Sanders Golf," he had always dealt with Earl Sanders in the past and that, regardless which company he was working with in 2009, "I was still dealing with Earl Sanders in my mind." "Earl was the guy in the field. Earl was the guy that produced the quality that I was happy with. So as long as I had Earl [on site], it was all the same to me. . . . That was important to me, [to] have Earl on site."

Accordingly, we conclude that there is some evidence to support the trial court's finding that Augusta National assented to the modification of the contract to replace "C. R. Sanders, Inc." with "Joe Sanders d/b/a Sanders Golf" and thereby name the latter sole proprietorship as the contractor. Thus, we are bound by that finding, and this enumeration presents no reversible error.

3. Buckler contends that the trial court erred in finding that the claim filed by "Joe Sanders d/b/a Sanders Golf" was timely. Buckler relies on OCGA § 18-4-85, which is entitled "Traverse of answer of garnishee by plaintiff" and provides that, once the garnishee serves his answer on the plaintiff, the plaintiff or claimant must traverse the answer within 15 days after it is served or the garnishee is automatically discharged from further liability with respect to the plaintiff's summons. According to Buckler, because Sanders Golf failed to file a claim within 15 days of the answer filed by Augusta National, the claim was not properly before the court and should not have been granted.

Because "Joe Sanders d/b/a Sanders Golf" was not yet a party to the garnishment action when Augusta National filed its answer, however, the applicable Code section is OCGA § 18-4-95, which provides that,

> [a]t any time before judgment is entered on the garnishee's answer or money or other property subject to garnishment is distributed, any person may file a claim in writing under oath stating that he has a claim superior to that of the plaintiff to the money or other property in the hands of the garnishee subject to the process of garnishment,

and, upon the filing of such a claim, "the claimant shall [become] a party to all further proceedings upon the garnishment." See *Akridge v. Silva*, 298 Ga. App. at 865 (1) (ruling that OCGA § 18-4-95 governed the time period in which a non-party to the garnishment action was required to file a notice of his claim to the funds at issue).

Accordingly, because Sanders Golf filed a claim before the court had entered judgment in the garnishment action or ordered the

distribution of the money at issue, the claim was timely under OCGA § 18-4-95, and the trial court did not err in considering it.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED AUGUST 27, 2010.

*Thompson, O'Brien, Kemp & Nasuti, Ted W. Hight III*, for appellant.

*Hull Barrett, Patrick J. Rice, Richard M. Gailey, Jr.*, for appellee.