**In the Matter of Erica Danielle WILLIAMS, Debtor.**

**No. 11–10804–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Sept. 22, 2011.

H. Brooks Cotten, H. Brooks Cotten, PC, Newnan, GA, for Debtor.

---

### ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is the Objection to Exemption filed by Ford Motor Credit Company, LLC (hereinafter the "Creditor"). The Creditor seeks to disallow Erica Danielle Williams' (hereinafter the "Debtor") exemption of garnished wages because the wages are not property of her bankruptcy estate. Accordingly, the Court must determine whether the Debtor held any interest in the garnished wages at the time she filed her Chapter 7 petition. This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 1334; § 157(b)(2)(B); *In re Lafoon*, 278 B.R. 767, 771 (Bankr.E.D.Tenn.2002).

### BACKGROUND AND PROCEDURAL HISTORY

The Creditor filed a garnishment proceeding against the Debtor in state court on January 24, 2011 and served the garnishment summons on the Debtor's employer on January 28, 2011. The Debtor's employer answered the summons on February 22, February 28, and March 7, 2011, remitting $417.64 deducted from the Debtor's prepetition wages. Although the Debtor did not file a traverse in the garnishment proceeding, the funds remained in the possession of the state court at the time the Debtor filed her bankruptcy petition on March 4, 2011.

On Schedule B, the Debtor disclosed $417.64 in wages garnished within ninety days of the petition date. She claimed the funds as exempt on Schedule C, pursuant to O.C.G.A. § 44–13–100(a)(6). On March 7, 2011, the Debtor filed a motion to avoid the Creditor's lien. The Creditor filed no response, and the Debtor's motion was granted on April 29, 2011.

In the state court, the Debtor filed a Motion to Condemn Funds, requesting the release of the funds to the Chapter 7 Trustee, pursuant to sections 542 and 543 of the Code. The state court then paid the

funds to the Chapter 7 Trustee, who released the funds to the Debtor. The Debtor's attorney is currently holding the funds, pending the Court' decision.

On May 13, 2011, the Creditor objected to the Debtor's claimed exemption on the basis that, under Georgia law, complete title to the funds had passed to the Creditor and, therefore, the Debtor had no interest in the garnished wages on the petition date. In response, the Debtor argued that she retained an interest in the garnished wages because, although the service of the garnishment summons caused a lien to attach to the funds, the complete bundle of rights in the funds had not passed to the Creditor as of the petition date.

CONCLUSIONS OF LAW

The issue before the Court is whether the Debtor is entitled to the garnished wages as her exempt property. Under section 522(b)(1) of the Bankruptcy Code, "an individual debtor may exempt from property of the estate the property listed ..." 11 U.S.C. § 522(b)(1). Further, section 522(f) permits the avoidance of judicial liens that impair any such exemption. *Id.* § 522(f). Accordingly, if the funds became property of the estate, the Debtor is entitled to exempt the funds pursuant to O.C.G.A. § 44–13–100(a)(6),[1] and the Creditor's lien on the funds has been avoided pursuant to section 522(f).

■ The Court must first determine whether the Debtor had any interest in the garnished wages at the time the petition was filed. *See In re Johnson,* 2010 WL 5296944 at 3 (E.D.Mich.2010) ("Having no property interest in the funds at the time of the petition, Debtor could not have exempted the funds under § 522(b)."). Under section 541(a)(1), property of the estate is defined as "... all legal or equitable

interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "While the question of 'whether a debtor's interest constitutes property of the estate is a federal question ... the nature and existence of the [debtor's] right to property is determined by looking at state law.'" *In re Builders Transport, Inc.,* 471 F.3d 1178, 1185 (11th Cir.2006) (citing *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Here, the Court must consider the Georgia Code provisions dealing with garnishment proceedings.

Under Georgia law, "[a]ll property, money, or effects of the defendant in the possession or control of the garnishee ... shall be subject to process of garnishment...." O.C.G.A. § 18–4–20(b). To initiate the garnishment process, the judgment creditor serves a summons of garnishment, along with an affidavit, upon the garnishee. The summons commands the garnishee to file an answer, generally within between thirty and forty-five days after the service of the summons, which must be accompanied by the money or other property subject to garnishment. *Id.* § 18–4–62(a). Notice of the summons must be provided to the defendant. *Id.* § 18–4–64(a).

The defendant may traverse the plaintiff's affidavit by challenging "the existence of the judgment or the amount claimed due thereon" or "may plead any other matter in bar of the judgment, except ... the validity of the judgment upon which a garnishment is based." *Id.* § 18–4–65(a)–(b). Section 18–4–93 more specifically provides how the defendant can become a party to a garnishment action:

A garnishment proceeding is an action between the plaintiff and the garnishee;

---

**1.** Unless otherwise noted, all references to "Section" are to the Georgia Code, while all references to "section" are to the Bankruptcy Code.

but, at any time before a judgment is entered on the garnishee's answer or before money or other property subject to garnishment is distributed, the defendant may become a party to the garnishment for the purposes set out in Code Section 18–4–65 by filing a traverse to the plaintiff's affidavit stating that the affidavit is untrue or legally insufficient; and he shall be a party to all proceedings thereafter. . . .

*Id.* § 18–4–93. Similarly, any other party with a claim superior to that of the plaintiff may become a party to the proceedings by filing a written claim, "[a]t any time before judgment is entered on the garnishee's answer or money or other property subject to garnishment is distributed." *Id.* § 18–4–95.

If no traverse or claim has been filed within fifteen days of the filing of the garnishee's answer, the clerk shall pay any money delivered to the court by the garnishee to "the plaintiff or his attorney on his application." *Id.* § 18–4–89(1). If no money or other property has been delivered by the garnishee, "judgment shall be entered for the plaintiff and against the garnishee for the money or other property and execution shall issue on the judgment." *Id.* § 18–4–89(3).

The Creditor asserts that the Debtor either lost all interest in the funds when the wages were earned or when she failed to file a traverse within fifteen days of the filing of her employer's answer, as provided for in Section 18–4–89(1). As to the latter argument, it fails on the facts of this case because the fifteen-day period had not actually expired before the Debtor filed her petition. The garnishee first answered the Creditor's summons on February 22, 2011, and the Debtor filed her petition on March 4, 2011, only ten days later.

Further, the Court disagrees with the correctness of Creditor's position, since it overlooks the language contained in sections 18–4–93 and 18–4–95, which gives the defendant and any third party with a superior claim until the time "a judgment is entered on the garnishee's answer or before money or other property subject to garnishment is distributed" to file a traverse or a claim. In this case, the money had not been distributed, presumably because the Creditor had not yet made application for its disbursement. Therefore, even if the fifteen-day period had expired, the Debtor retained the right to file a traverse at the time her bankruptcy petition was filed.

The Creditor urges the Court to follow *Flournoy v. Pate (In re Antley),* 18 B.R. 207 (Bankr.M.D.Ga.1982). At issue in *In re Antley* was whether the garnishing creditor violated the automatic stay by refusing to turn over garnished funds to the trustee. The creditor served a garnishment summons on the debtor's employer on May 7, 1981. The debtor filed a bankruptcy petition on October 1, 1981. Postpetition, the employer remitted to the state court the amounts it had withheld prepetition from the debtor's wages. The debtor claimed the funds as exempt.

The court held that the creditor did not violate the stay because the funds did not become property of the estate. The court reasoned that the debtor did not have an interest in the property because the service of the garnishment summons caused a lien to attach to the wages and the debtor had not filed a traverse challenging the creditor's affidavit or asserted any right to the funds in the bankruptcy court. *See id.* at 212 (citing Georgia Code § 46–401; § 46–403).

This Court agrees with the conclusion of *In re Antley* that the provisions of the Georgia Code apply to determine whether

the debtor retains an interest in the garnished funds. The *Antley* decision supports the Court's conclusion that a debtor does not lose all interest in the funds when, as the Creditor has asserted above, the summons is served or the funds are deposited with the state court. *Antley* appears to recognize that the debtor has some interest left in the funds until at least the time for filing a traverse has expired.

However, the Court's decision herein must diverge from the *holding* of *Antley* because, as noted above, the Court interprets Georgia law to allow the debtor, or a third party with a superior claim to the funds, to file a traverse or a claim until either: (1) the time the funds are distributed to the plaintiff/garnishing creditor; or (2) the time a judgment is entered on the garnishee's answer. *See* O.C.G.A. § 18–4–93 (the defendant may file a traverse of the plaintiff's affidavit "at any time before a judgment is entered on the garnishee's answer or before money or other property subject to garnishment is distributed"); § 18–4–95; *see also A.M. Buckler & Associates, Inc. v. Sanders,* 305 Ga.App. 704, 709, 700 S.E.2d 701, 705 (Ga.App.2010) (holding that the expiration of the fifteen-day period stated in Section 18–4–85 for filing a traverse or a claim did not cut off a claimant's right to file a claim where no judgment had been entered on the garnishee's answer and the funds had not yet been distributed).

The court in *Antley* recognized as much, stating:

> Conceivably, the Debtor could have become a party in the garnishment proceedings in the Municipal Court and asserted limited claims there had he not filed the Chapter 13 case thereby invoking the automatic stay. Under Title 46 of the Georgia Code Debtor could have made himself a party to the garnishment proceedings and asserted limited rights to the funds *up to the time of distribution by the Municipal Court.* On the date that the Chapter 13 case was filed the *funds were still in the hands of his employer,* and the critical date is October 1, the date of the filing the Chapter 13 case and not the date that employer in fact delivered the funds to the Municipal Court. Having invoked the automatic stay, Debtor could have requested that the stay be lifted to permit him to become a party in the Municipal Court and there assert his possible limited rights or interest to the funds, or he could have asserted those limited rights in the Bankruptcy Court. The Debtor did neither, and, accordingly, it must be concluded that he had no rights or grounds to assert a claim in the Municipal Court to the funds withheld by his employer.

*Antley,* 18 B.R. at 210–11 (emphasis added). Thus, the *Antley* court allows for the possibility that a Chapter 13 debtor, under such circumstances, could seek relief from the automatic stay and assert rights to the fund in state court or assert such a right in the bankruptcy court. It is not clear why the failure to do so would change the fact that, on the petition date, the debtor continued to have an interest in the funds.

Other courts have found the existence of similar rights sufficient to render the funds property of the estate. For example, in *In re Richardson,* 52 B.R. 237, 240 (Bankr.M.D.Tenn.1985), Judge Lundin held that, because Kentucky law required "[f]urther state court involvement" (payment of the funds by the clerk to the creditor) to fully terminate the Chapter 7 debtor's right to the funds after they were deposited with the state court, "[t]he debtor has not lost her right to petition the state court for possession of the funds, for example, by showing that the underlying

judgment debt has been discharged in bankruptcy," and, "[u]pon the rationale of *Whiting Pools*, ... the funds are property of the estate and may be recovered by the debtor." As noted by Judge Lundin, "[u]nder other garnishment schemes, payment by the garnishee to the court does not complete the process so as to divest the debtor of any interest in the funds." *See id.* (citing *In re Lewis*, 21 B.R. 926 (Bankr.N.D.Ala.1982) (until the entry of an Order of Condemnation, debtor continued to have a right in the garnished funds, notwithstanding the fact that, "under the State Law, the Defendant had no standing to defeat the payment of Plaintiffs' judgment out of his earnings and that he had no remedy available under State Law; Bankruptcy [was] the only relief available")); *White v. Stephens*, 43 B.R. 97 (Bankr.N.D.Ala.1984); *see also Rodriguez v. First American Bank, S.S.B. (In re Rodriguez)*, 278 B.R. 749 (Bankr.N.D.Texas 2002) ("It does not matter that Debtors did not have possession or use of the garnished funds pre-petition because the funds were impounded in the hands of the garnishee—only if title to the funds had passed pre-petition would the funds be beyond the reach of section 542."); *In re Aughenbaugh*, 2002 WL 33939738 (Bankr.D.Idaho 2002).

In support of its argument that a debtor lacks any interest in garnished funds after their deposit with the state court, the Creditor also cites *In re Newell*, 71 B.R. 672 (Bankr.M.D.Ga.1987). According to the Creditor, the *Newell* court lifted the automatic stay to allow the creditor to claim garnished funds from the state court. In that case, the judgment creditor served the garnishment summons; the debtor earned wages; and the employer deposited those wages with the state court. The funds were not distributed to the creditor prior to the petition date. The creditor moved for relief from the stay to allow it to obtain the funds from the state court, asserting that neither the debtor nor the estate had any claim to the funds. The debtor claimed the funds as exempt, but neither the trustee nor the debtor had filed a complaint to avoid a transfer or a motion to avoid the creditor's lien.

Contrary to the Creditor's characterization of the holding, the *Newell* court held only that the debtor could not avoid any prepetition transfer of the funds as a preference because the debtor's right to do so under section 522(h) was dependent upon the trustee's right to do so under section 547, and section 547(c)(8) [then section 547(c)(7) ] defeated any claim by the trustee for avoidance of the transfer. The court then noted that the "question of whether or not the Debtor could obtain the wages in question by filing a motion to avoid a judicial lien under Bankruptcy Code § 522(f)(1) has not been addressed by the parties." *Newell*, 71 B.R. at 674.

The court's actual ruling on the motion for relief was that the stay would be lifted in fifteen days unless the debtor, within that time, filed a motion to avoid the creditor's judicial lien. *Id.* Since a motion to avoid a judicial lien would have been successful only if the debtor could have claimed the funds as exempt, and the debtor could only have exempted the funds if they were property of the estate, the court's grant of such an opportunity contradicts the Creditor's contention that the *Newell* court concluded that the debtor lacked any interest in the funds. At the very least, the court made no decision as to whether the funds became property of the estate, and at most, it can be cited in support of the Debtor's position that a debtor retains an exemptible interest in garnished funds so long as the funds were in the hands of the state court when the bankruptcy petition was filed. The opin-

ion, therefore, does not persuade the Court to adopt the Creditor's position.

The Creditor's other argument—that the Debtor lost all interest in the funds when the wages were earned—relies upon *In re Conner*, 733 F.2d 1560 (11th Cir. 1984). In *Conner*, the Eleventh Circuit Court of Appeals reversed the lower courts' conclusion that the payment of garnished funds to a creditor by the state court within the preference period was an avoidable preferential transfer when the summons itself was served prior to the preference period. In that case, the debtor had earned wages and the garnishee answered the summons by paying money into the registry of the court outside the preference period, but the state court disbursed the funds to the creditor inside the preference period.

The bankruptcy court and the district court held that the transfer of the funds from the state court to the creditor constituted a "transfer" completed within the preference period. *See Conner*, 733 F.2d at 1561–62. The court noted that the lower courts' opinions focused on "whether the garnished funds were still 'property of the debtor' at that point, and concluded that they were." *Id.* at 1562. Without necessarily holding that this conclusion was in error, the court went on to state

that the courts' "definition of a transfer ... [is] incorrect." *Id.*

For purposes of a preference suit, the court explained, the time at which a "transfer" occurs must be determined in accordance with section 547(e). That section provides "a transfer is made ... at the time the transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time ... [and] "a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)-(2). In accordance with section 547(e), the *Conner* court found that the garnishment lien was so perfected at the time of the service of the garnishment summons because, under Georgia law, a lien attaches to garnished funds upon service of the summons and "[o]nce the lien attaches, no contract creditor can obtain a superior judicial lien." *Conner*, 733 F.2d at 1562.[2]

The *Conner* court did not address the issue of whether the debtor retained an interest in the funds after the attachment of the lien. The decision did not rest on a finding that the attachment of the lien terminated the debtor's complete interest in the funds or prevented the debtor from obtaining any interest in the funds. The

2. The *Conner* decision has been criticized for its failure to consider the impact of section 547(e)(3). Judge Norton later concluded that the *Conner* court did not discuss the exception to the general rule, *i.e.* section 547(e)(3)'s requirement that a transfer cannot occur until the debtor acquires an interest in the property, because, in *Conner*, the debtor had earned the wages prior to the start of the preference period. *See Matter of Morton*, 44 B.R. 750, 751 (Bankr.N.D.Ga.1984); *see also In re Morehead*, 249 F.3d 445, 448 (6th Cir.2001). Be that as it may, the continuing validity of the decision has also been called into doubt in the wake of the United States Supreme

Court's decision in *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). *See Freedom Group, Inc. v. Lapham–Hickey Steel Corp. (In the Matter of Freedom Group, Inc.)*, 50 F.3d 408, 412 (1995) (noting that *Conner's* conclusion that the "transfer" occurs when the garnishment summons is served fails to consider the fact that "myriad events can intervene between" the service of the summons and the creditor's obtaining payment that may interfere with the creditor's ability to claim the funds). Accordingly, *Conner* may no longer be good law as to this issue. *Id.* ("[I]n our view, [*Conner* does] not survive that decision.").

decisions of other courts of appeals have done so. For example, the Second Circuit Court of Appeals, in *In re Riddervold*, 647 F.2d 342, 346 (2d Cir.1981), held that, under New York law, the "[s]ervice of the income execution on the employer in effect works a novation whereby the employer owes 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor." Essentially, the court concluded the debtor never obtains any interest in the funds that can be transferred inside the preference period. *Id.; see also In re Coppie*, 728 F.2d 951, 952–53 (7th Cir.1984) (holding that, under Indiana law, the service of the garnishment summons worked a similar novation).

Unlike *Riddervold, Conner* does not discuss any novation that would occur under Georgia law upon service of the garnishment summons.[3] Instead, *Conner* reached its result solely by interpreting the term "transfer" as provided in subsections 547(e)(1) and (e)(2). *Conner* clearly establishes the time at which, under Georgia law, a judgment creditor obtains a superior lien on garnished funds, *vis a vis* other contract creditors. Subsections 547(e)(1) and (e)(2) require the court to pinpoint this time when analyzing a preferential transfer because, if the lien that perfects the creditor's secured status with regard to other creditors is not avoidable, the later transfer of that creditor's collateral to the creditor would not satisfy the requirement of section 547(b)(5) that the creditor receive more than it would have received if the transfer had not been made. *See, e.g., In re James*, 257 B.R. 673 (8th Cir. BAP 2001) (considering the debtor's argument that the "second transfer" of funds from the debtor's employer to the creditor,

which occurred inside the preference period, was an avoidable preference, the court explained "unless the debtors can avoid the transfer of their interest resulting from the attachment of the garnishment lien, they cannot avoid that payment"; "[i]f the lien is unavoidable, then payment on the lien is not a transfer of the debtors' interest in property nor does that transfer allow Planters to receive more than it would have received if the transfer had not been made.").

But the fact that the debtor retained some interest in the funds after the attachment of the lien is important to the issue at hand—whether the Debtor had an interest in the funds at the time she filed her bankruptcy petition. *Conner* provides no reasoning as to how or when the debtor loses all interest in the funds. Interpreting *Conner* to hold that the attachment of the lien to the funds transferred the debtor's complete interest in the funds seems, as one court put it, like an "oxymoron," since one cannot hold a lien on its own property. *In re Weatherspoon*, 101 B.R. 533 (Bankr.N.D.Ill.1989) ("A lien is .... a right to have property applied to payment of the debt. But that presupposes that someone else owns the property. Otherwise the lienholder would have a lien on his own property. A transfer of all the debtor's interest in property would satisfy the debt, not merely secure its payment."). Accordingly, the Court declines to read *Conner* as holding that the service of the garnishment summons terminated the debtor's complete interest in the garnished funds.

This contested matter was not brought to recover a preferential transfer, but rather asks the question whether, under state law, a prepetition transfer of the

---

**3.** This Court has previously rejected the "continuing lien theory" relied upon by the court in *Riddervold*, holding that, under Georgia

law, the service of the garnishment summons "does not vest title in the plaintiff." *In re Evans*, 16 B.R. 731 (Bankr.N.D.Ga.1982).

Debtor's complete interest in the funds occurred prior to the commencement of her case. Therefore, the Court must consider, without the guidance of section 547(e), whether the Debtor had any "legal or equitable interest" in the funds at the time she filed her petition. *See id.* § 541(a)(1); *In re Aughenbaugh,* 2002 WL 33939738 (Bankr.D.Idaho 2002) (noting that two preference cases, which construed the attachment of a garnishment lien to be a "transfer" within the meaning of section 547(e)(2) could not be relied upon to hold that the attachment of the lien "fully divest[ed] all debtor's interests in the funds garnished"). For the reasons stated above, the Court must answer that question in the affirmative.

### CONCLUSION

Having considered the arguments and authorities presented by the parties, the Court concludes that, although the Creditor had a lien on the funds, complete title to the garnished funds had not passed to the Creditor prior to the filing of the Debtor's petition. As the Debtor continued to have an interest in the funds, the funds became property of the Debtor's estate, pursuant to section 541(a)(1) of the Code, and, in accordance with section 522(f), the Creditor's lien on the funds was avoided by entry of the Court's Order on April 29, 2011. The Creditor's objection to the Debtor's exemption of the funds must be overruled.