**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 11, 2013**

# In the Court of Appeals of Georgia

A13A0324. CARRIER 411 SERVICES, INC. v. INSIGHT TECHNOLOGY, INC.

MILLER, Judge.

Insight Technology, Inc. obtained a $1.4 million judgment against Darren Brewer, and when Brewer failed to satisfy the judgment, Insight Technology filed a garnishment action against Carrier411 Services, Inc. ("Carrier411"). Carrier411 answered the garnishment summons and refused to pay the requested amount, claiming that Brewer was no longer an employee of Carrier411 and it was not holding any funds belonging to him. Insight Technology subsequently filed a traverse to Carrier411's answer. Carrier411 moved to dismiss the action on the ground that Insight Technology did not have the authority to maintain the action since it had not received a certificate of authority under OCGA § 14-2-1502 (a). Following the

hearing, the trial court denied Carrier411's motion to dismiss and granted Insight Technology's traverse, entering judgment against Carrier411 in the principal sum of $736,139.60. Carrier411 appeals from those rulings, contending that the trial court erred in (1) denying its motion to dismiss; (2) allowing the garnishment action to "reverse-pierce" an individual in order to reach the assets of a corporation; and (3) expanding the garnishment proceeding to consider claims of fraud and collusion, and granting Insight Technology's traverse without sufficient proof to support the action. For the reasons that follow, we affirm.

In a garnishment proceeding, "the question of ownership of the funds is one of fact for the trial court, as fact finder, to decide." (Citation and punctuation omitted.) *A.M. Buckler & Assoc., Inc. v. Sanders*, 305 Ga. App. 704, 706 (700 SE2d 701) (2010). "On appeal of the judgment of a trial judge sitting without a jury, a judgment will not be disturbed if there is any evidence to sustain it." (Citations and punctuation omitted.) Id.

The record shows that Carrier411 was organized in November of 2004 by Michael Dawson, a long time friend of Darren Brewer. The following year, Dawson sold or transferred his shares in Carrier411 to Concentrik Technologies, LLC ("Concentrik"), at which point Concentrik became the sole shareholder of Carrier411.

2

Brewer was involved in the forming of and owned a 70-percent interest in Concentrik, an off-shore "captive insurance company" that reinsured some of the receivables from a business in which Brewer was involved. The remaining shares of Concentrik were held by Dawson and Brewer's girlfriend. Within a month of the transfer of ownership of Carrier411 from Dawson to Concentrik, CarrierGuard, Inc. ("CarrierGuard"), an incorporated entity in which Concentrik is the sole shareholder, purchased a 15-percent interest in Carrier411.

Brewer was the President of CarrierGuard and the manager of Concentrik through at least November 20, 2010. Brewer also served as a director and the President of Carrier411 from August 2005 until August 21, 2010, at which time there appears in Appellant's minutes a resignation prepared by Brewer. Thereafter, Brewer assumed the corporate office of Secretary, without salary, and continued on as a director, without compensation. As Carrier411's Secretary, Brewer acted as an interface between the board of directors and the President of the company and also dealt with financial matters with the company's accountant.

In July 2008, Insight Technology obtained a judgment against Brewer in the amount of $1,400,000. On September 1, 2010, Insight Technology filed the instant

garnishment action, naming Carrier411 as garnishee and seeking collection in the principal amount of $1,163,594. The garnishment was served upon Carrier411 on September 3, 2010. Brewer's girlfriend signed and filed the garnishment answer, stating that Brewer was not then a current employee of Carrier411. Brewer admitted that his girlfriend was not employed by Carrier411 at that time, and that she did not have personal knowledge to form the basis of the company's garnishment answer. Brewer did not know who advised his girlfriend to complete the answer. Although Brewer maintained that he resigned as Carrier411's President in August 2010, Carrier411's payroll records reflect that Brewer drew a partial salary for September 2010 and that his termination date was September 13, 2010.

The garnishment period ended on or about March 1, 2011. Soon after the garnishment period expired, Carrier411 transferred $300,000 from its bank account to Concentrik, which Brewer claimed was a dividend payment. Carrier411 authorized the transfer of another $300,000 to Extranet Commerce, LLC, an entity solely owned by Brewer. Brewer received an unspecified portion of this $300,000.

Subsequent to the end of the garnishment period, the trial court held a hearing on Insight Technology's traverse. At the bench trial, Carrier411 moved to dismiss the action, arguing that Insight Technology was barred from pursuing the action because

4

it was a foreign corporation that lacked authorization to conduct business in Georgia since it had not obtained a certificate of authority. Carrier411 conceded, however, that it did not have evidence that Insight Technology was transacting business. The trial court denied Carrier411's motion to dismiss, ruling that Carrier411 had not pled the issue as an affirmative defense.

Following the bench trial, the trial court issued an order granting Insight Technology's traverse and entered a judgment against Carrier411 in the principal sum of $736,139.60.[1] The trial court ruled that Carrier411's answer to Insight Technology's garnishment action was untrue, the evidence showed that Carrier411 continued to employ Brewer after being served with the garnishment summons, and Carrier411 did indeed possess property owned by Brewer. The trial court concluded that the evidence showed that Brewer and Carrier411 colluded to fraudulently suspend payments from Carrier411 to Brewer until the garnishment period expired and that, after the expiration, Carrier411 paid out large sums of money to other entities controlled by Brewer upon Brewer's direction. The trial court concluded that this conduct constituted a fraudulent and collusive attempt to avoid and defeat Insight

---

[1] Carrier411 renewed its motion to dismiss the action, and the trial court again denied its motion.

5

Technology's garnishment. We granted Carrier411's application for discretionary review, and this appeal ensued.

1. Carrier411 contends that the trial court erred in denying its motion to dismiss on the ground that Insight Technology could not pursue the garnishment action since it was not authorized to conduct business in Georgia. We disagree.

A foreign corporation must obtain a certificate of authority from the Secretary of State before it can transact business in this State. OCGA § 14-2-1501 (a). Additionally, "[a] foreign corporation transacting business in this [S]tate without a certificate of authority may not maintain a proceeding in any court in this [S]tate until it obtains a certificate of authority." OCGA § 14-2-1502 (a).

> A motion to dismiss under OCGA § 14-2-1502 (a) is a motion in abatement or a dilatory plea, which is not an adjudication on the merits. Such a plea based upon OCGA § 14-2-1502 (a) is raised as an affirmative defense, which must be specially pled in the answer.

(Citations, punctuation, and footnote omitted.) *Health Horizons, Inc. v. State Farm Mut. Auto. Ins. Co.*, 239 Ga. App. 440, 444 (521 SE2d 383) (1999); see also OCGA § 9-11-8 (c). A defendant bringing a motion in abatement has the burden of proving the facts necessary to support a judgment of dismissal. See *Jones Motor Co. v. Anderson*, 258 Ga. App. 161, 162 (573 SE2d 429) (2002).

6

Here, Carrier411 did not plead an affirmative defense under OCGA § 14-2-1502 (a) in its answer, and it waited until the trial to orally move to dismiss on this ground. "[The] purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what must be met as a defense." (Citation and punctuation omitted.) *Hansford v. Robinson*, 255 Ga. 530 (1) (340 SE2d 614) (1986). Since Carrier411 raised the issue for the first time at the trial, the affirmative defense was not properly raised in this case.

Even if properly raised, Carrier411 failed to establish that Insight Technology was transacting business in Georgia within the meaning of OCGA § 14-2-1501 (a). Notably, at the trial, Carrier411 conceded that it did not have evidence that Insight Technology was transacting business. Moreover, a corporation is not considered to be transacting business in Georgia merely because it maintains an administrative action or a lawsuit, or attempts to secure a debt. OCGA § 14-2-1501 (b) (1), (8); see also *Hall v. Sencore, Inc.*, 302 Ga. App. 367, 368 (691 SE2d 266) (2010). Therefore, the trial court did not err in denying Carrier411's motion to dismiss.

2. Carrier411 contends that the trial court erred by allowing Insight Technology to "reverse-pierce" the corporate veil in order to reach the assets of Carrier 411. We disagree.

7

Carrier411 correctly notes that the Georgia Supreme Court has held that there is no cause of action in Georgia for "reverse piercing" of the corporate veil, whereby the traditional veil-piercing doctrine is extended to allow a third-party creditor to pierce the veil in order to satisfy the debts of an individual out of the corporation's assets. See *Acree v. McMahan*, 276 Ga. 880, 881-883 (585 SE2d 873) (2003). The Supreme Court refused to recognize a plaintiff's "reverse-piercing" claim as an equitable cause of action because there were other adequate remedies available at law. Id. at 883. "[D]isregard of the corporate form rests on equitable principles. As a consequence, [a claim for reverse-piercing of the corporate veil] is appropriately granted only in the absence of adequate remedies at law." (Citation and punctuation omitted.) Id. at 882-883. Since other, traditional legal remedies were available to the plaintiff, the Georgia Supreme Court rejected the reverse-piercing claim. Id. at 883.

Here, Insight Technology was not pursuing a "reverse-piercing" claim, or any other equitable action, against Carrier411. Rather, this action arises from a garnishment action expressly authorized by law. See *Pate v. Pate*, 280 Ga. 796, 797-798 (2) (631 SE2d 103) (2006) (trial court's finding that a father's corporate income should be used in calculating his child support obligations did not implicate reverse piercing since the action was authorized by law). Specifically,

8

[i]n a case such as this, in which a plaintiff has obtained a money judgment against a defendant, the plaintiff is entitled to file a garnishment action in a court which has jurisdiction over the garnishee, the person or entity which has in its possession money or property which belongs to the defendant and is subject to garnishment. OCGA §§ 18-4-20 (property subject to garnishment); 18-4-60 (judgment creditor' right to garnishment); 18-4-61 (court must have jurisdiction over garnishee); 18-4-82 (contents of answer of garnishee).

(Punctuation omitted.) *A.M. Buckler*, supra, 305 Ga. App. at 705. Furthermore, Insight Technology was entitled to the process of continuing garnishment against any garnishee who was Brewer's employer. OCGA § 18-4-110 (providing that the methods, practices, and procedures for a continuing garnishment are the same as any other garnishment proceeding). Consequently, there is no merit to Carrier411's argument that the trial court erred by allowing Insight Technology's garnishment action to proceed.

3. Carrier411 next argues that the trial court erred in granting judgment to Insight Technology because Insight Technology improperly "tacked on" claims of fraud and collusion that expanded the narrow scope of a garnishment action, and the trial court's findings were not supported by the evidence or findings of fact. Again, we disagree.

When a plaintiff traverses a defendant's answer, the plaintiff bears the burden of demonstrating by a preponderance of the evidence that the garnishee has the property of the debtor. See *W.R. Leasing, Inc. v. Aetna Cas. & Sur.*, 211 Ga. App. 818, 819 (440 SE2d 714) (1994); *Oxford v. Metter Lumber Co.*, 104 Ga. App. 758, 760 (123 SE2d 156) (1961).

> OCGA § 18-4-92 provides that [o]n the trial of the plaintiff's traverse, if the court finds the garnishee has failed to answer properly the summons of garnishment, the court shall enter a judgment for any money or other property [which] the court finds subject to garnishment. It is insufficient for the trial court merely to grant the plaintiff's traverse and to award the plaintiff whatever money it swears is owed by a defendant. The trial court must specifically find that the garnishee has money owing to or belonging to the defendant debtor.

(Citation and punctuation omitted.) Id. However, "Georgia's garnishment statutes, OCGA § 18-4-1 et seq., are in derogation of the common law and, thus, must be strictly construed. Garnishment is purely a statutory proceeding and will not be extended so as to reach money or property of the defendant not made subject thereto by statute." (Citations and punctuation omitted.) *A.M. Buckler*, supra, 305 Ga. App. at 704-705.

The garnishment statute provides that assets subject to garnishment include "[a]ll debts owed by the garnishee to the defendant at the time of service of the

summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of service to the date of the garnishee's answer shall be subject to process of garnishment." OCGA § 18-4-20 (b). Additionally, "[a]ll property, money, or effects of the defendant in the possession or control of the garnishee at the time of service of the summons of garnishment upon the garnishee or coming into the possession or control of the garnishee at any time from the date of service of the summons of garnishment upon the garnishee to the date of the garnishee's answer shall be subject to process of garnishment." OCGA § 18-4-20 (c). An independent liability of the garnishee arises when the garnishee no longer possesses the debtor's property due to some arrangement with the debtor to defeat the garnishment lien. See OCGA § 18-4-111 (a); *Stone v. George F. Richardson, Inc.*, 169 Ga. App. 232, 234-235 (312 SE2d 339) (1983), abrogated on other grounds, *State v. Glover*, 281 Ga. 633, n.4 (641 SE2d 543) (2007).

Here, there is ample evidence in the record to support the trial court's conclusion that Carrier411's answer was untrue. Notably, in its answer, Carrier411 stated that from the time of service of the garnishment summons, which occurred on September 3, 2010, it had no property belonging to Brewer, Brewer was not an employee, and no wages were to be paid to Brewer. The evidence shows, however,

11

that despite Brewer's claims that he resigned effective August 31, 2010, he drew a partial salary for September 2010 and that his termination date was September 13, 2010. Brewer was paid approximately $3,000.

Moreover, the trial court was authorized to conclude that over $600,000 in transfers from Carrier411 to entities controlled by Brewer could be subject to garnishment. Brewer did not dispute that after the garnishment period ended on March 1, 2011, Carrier411 transferred $300,000 from its bank account to Concentrik, a company in which Brewer owned a 70-percent interest. The record also shows that Carrier411 wrote a $300,000 check to Extranet Commerce, LLC, an entity solely owned by Brewer, and that Brewer admitted receiving an unspecified portion from this $300,000 payment. See *Water Processing Co. v. Southern Golf Builders, Inc.*, 248 Ga. 597, 598 (285 SE2d 21) (1981) (check is garnishable asset). Although Brewer claimed that these asset transfers were for legitimate business purposes, the trial court, sitting as the trier of fact, was authorized to find that Brewer was not credible in this respect. See *A.M. Buckler*, supra, 305 Ga. App. at 707-708 (it is within the province of the trial court in a garnishment proceeding, as the trier of fact, to weigh the evidence and determine witness credibility).

Based on the evidence presented at the hearing, the trial court was authorized to conclude that the preponderance of the evidence showed that Brewer and Carrier411 colluded to fraudulently suspend payments from Carrier411 to Brewer until the garnishment period expired in an attempt to defeat the garnishment action. We note that

> [t]he cardinal rule of corporate law is that the corporation possesses a legal existence separate and apart from that of its officers, employees, shareholders, and directors. . . . Where the courts have disregarded the corporate entity because the corporation is the mere alter ego or business conduit of a person, it has generally been on the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice. To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

(Citations and punctuation omitted.) *Southern Environmental Group v. Rosebud Landscape Gardeners*, 196 Ga. App. 392, 394 (1) (395 SE2d 913) (1990).

In this case, Carrier411 was owned by Concentrik, a limited liability corporation in which Brewer held a 70-percent interest, and CarrierGuard, a corporation wholly owned by Concentrik. The rest of Concentrik's shares were held by Brewer's long-time friend, Dawson, and his girlfriend. In essence, Carrier411 was

13

owned and controlled by Brewer, Dawson, and Brewer's girlfriend. Additionally, at the time of the garnishment summons, Brewer served as the President of Carrier411, and following his resignation, he continued to have significant involvement in the financial affairs of the company through his service as the company's Secretary. Furthermore, although Brewer denied having any involvement in filing the garnishment answer, the evidence shows that his girlfriend, a part-owner of Carrier411, filed an untrue answer when claiming that at the time of service of the garnishment summons, Brewer was not an employee of Carrier411.

Although Carrier411 argues that Insight Technology improperly "tacked on" claims for fraud and collusion, the garnishment statutes are clear that "no payment made by the garnishee to the [debtor] or to his order, or by any arrangement between the [debtor] and the garnishee after the date of the service of the summons of garnishment upon the garnishee shall defeat the lien of garnishment. The other arrangements referred to mean arrangements constituting fraud and collusion between the [debtor] and the garnishee." (Citations and punctuation omitted.) *Gant, Inc. v. Citizens & Southern Nat. Bank*, 151 Ga. App. 212, 213 (1) (259 SE2d 485) (1979); see also *Stone*, supra, 169 Ga. App. at 235 (an independent liability arises where the garnishee no longer possesses the debtor's property due to some arrangement with the

14

debtor to defeat the garnishment lien). Indeed, "the garnishment law is designed to prevent evasions and subterfuges." (Citation and punctuation omitted.) *Toporek v. Water Processing Co.*, 169 Ga. App. 141, 143 (1) (312 SE2d 132) (1983).

In light of the evidence set forth above, we are bound to uphold the trial court's decision that Carrier411 and Brewer colluded to make false statements in an attempt to defeat the garnishment action. See *Worsham Bros. Co. v. FDIC*, 167 Ga. App. 163, 167 (4) (305 SE2d 816) (1983) (the trial court was authorized to find garnishee liable based upon the evidence and the "near transparency of the corporate veil shielding [debtor] behind the garnishee"); compare *Southern Environmental*, supra, 196 Ga. App. at 394-395 (1) (affirming trial court's determination that corporate fiction was maintained because "cannot reweigh the evidence but are bound to uphold the court's decision" if there is *any* evidence to support it). Therefore, we affirm the trial court's judgment.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*