In re Joseph H. HARMAN, Debtor.

Neil C. Gordon, Plaintiff,

v.

Joseph H. Harman, Linda J. Harman, The Linda J. Harman Irrevocable Trust, J.H.H. Holdings Corporation, First Equities Partners, Inc., First Equities Partners II, Inc., FCGI Associates, LCC., et al., Defendants.

Bankruptcy No. 11–67522–MHM.
Adversary No. 13–5211.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed March 31, 2014.

Neil C. Gordon, Theresa Y. Kananen, Sean Kulka, Sean C. Kulka, Arnall, Golden, Gregory LLP, Atlanta, GA, for Plaintiff.

James L. Paul, Chamberlain, Hrdlicka, White et al., Gregory S. Brow, David E. Gordon, Gary W. Marsh, McKenna Long & Aldridge, LLP, Atlanta, GA, for Defendants.

## ORDER ON MOTIONS TO DISMISS

MARGARET H. MURPHY,
Bankruptcy Judge.

This proceeding is before the court on Joseph H. Harman's *Motion to Dismiss,* filed August 28, 2013 (Doc. No. 27) ("Debtor's Motion"), and on the *Motion to Dismiss* of Linda J. Harman ("Mrs. Harman"), the Linda J. Harman Irrevocable Trust (the "Trust"), J.H.H. Holdings Corporation ("JHH"), First Equities Partners, Inc. ("FEP"), First Equities Partners II, Inc. ("FEP II"), and FCGI Associates, LLC ("FCGI"; together with Mrs. Harman, the Trust, JHH, FEP, FEP II, and FCGI, "Non–Debtor Movants") (Doc. No.

25) ("Non–Debtor Motion"; together with Debtor's Motion, the "Motions"). Debtor filed a Chapter 7 petition initiating the underlying case June 14, 2011 (the "Petition Date"). The Chapter 7 Trustee initiated this proceeding by filing a Complaint June 13, 2013, against Debtor and related persons and entities seeking avoidance and recovery of alleged fraudulent transfers and post-petition transfers made to the various Defendants and seeking declaratory judgment that certain Defendants are alter egos of Debtor or are otherwise invalid entities (Doc. No. 1, amended August 15, 2013 by Doc. No. 19) (as amended, the "Complaint"). Movants now assert the Complaint fails to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(6).

### Allegations of Fact[1]

Trustee's Complaint alleges that each Defendant is part of a scheme by which Debtor has hidden assets from creditors while maintaining control over and reaping the benefits of those assets.

The foundation of the alleged scheme is that Mrs. Harman is a "straw man," and that assets held in Mrs. Harman's name are in fact owned by Debtor. In support, Trustee alleges that Mrs. Harman has not been employed outside the home since 1974, and her only contribution to Debtor's business dealings are "ministerial acts" such as transferring funds between accounts and writing checks at the direction of Debtor. (Complaint at ¶ 34). Despite this, Debtor "divert[s] all remuneration to his wife" or into entities and instrumentalities nominally titled in her name. (Complaint at ¶ 35).

Similarly, Trustee asserts that Debtor uses the Trust as a mechanism to place his earnings and property beyond the reach of creditors. Though the Trust instrument states that Mrs. Harman established the Trust with a $10 contribution, Trustee asserts that substantially all of the assets held in the Trust had been generated through Debtor's efforts. (Complaint at ¶ 100–01). More specifically, Trustee asserts the Trust was initially funded from proceeds of the sale of two companies Mr. Harman founded and managed. (Complaint at n. 8). Trustee also asserts that Debtor exercises exclusive control of the Trust. Though the preamble of the Trust names both Debtor and Mrs. Harman as Trustees, the body of the Trust provides that Mrs. Harman "shall never be permitted to serve as a Trustee or Co–Trustee hereunder. . . ." (Complaint at ¶ 103). The Trust instrument designates Mrs. Harman and Debtor as co-beneficiaries, and states that Trust assets are to be used to support Mrs. Harman and Debtor. (Complaint at ¶ 102). Thus, Trustee asserts that the Trust is a self-settled trust, because Debtor is the settlor, trustee, and beneficiary of the Trust, and that Debtor has complete and exclusive control of all Trust assets. Trustee notes that this is corroborated by investment information of FCGI, which "assured potential investors that Debtor controls FCGI even though it is 99% owned by the Trust[.]" (Complaint at n. 9).

Trustee's allegations relating to the other Defendants primarily involve diverting Debtor's assets to the Trust or Mrs. Harman. For example, $200,005.46 was transferred February 28, 2008, from FCGI, an entity Trustee asserts is controlled exclusively by Debtor by virtue of Debtor's control of the Trust, to a bank account held in Mrs. Harman's name, without consideration (the "2/28/08 Transfer"). (Complaint at ¶ 42). Trustee asserts those

---

**1.** At the Motion to Dismiss stage, allegations of fact are assumed to be true, and the plead-ings are construed in the light most favorable to the nonmoving party.

funds were then used to pay for Debtor's residence, titled in Mrs. Harman's name, and household expenses. (Complaint at ¶ 43). Trustee also notes that, at Debtor's § 341 meeting of creditors held July 19, 2011, Debtor acknowledged that he has transferred money to Mrs. Harman to avoid garnishment, stating, "At the time, I was experiencing garnishment so here popped in $3,300 into an account that was still open and I transferred it to my wife so that it would not be garnished." (Complaint at ¶ 61).

Trustee alleges that Debtor has used the Trust as a "hiding place for his assets, and as a means of hindering, delaying, and defrauding his creditors." For example, Debtor receives monthly Social Security benefits, which he has consistently deposited into bank accounts titled in the name of the Trust (the "Social Security Transfers"). (Complaint at ¶ 121–22). Trustee lists a number of transfers of funds which, Trustee alleges, belonged to Debtor, should have been paid to Debtor, or over which Debtor had possession and control, but were instead transferred into accounts titled in the name of the Trust ("Miscellaneous Trust Transfers"). (Complaint at ¶ 145). Trustee notes that FCGI has made substantial distributions but, despite Debtor's 1% ownership, all of those distributions have been transferred into Trust accounts (the "FCGI Distribution Transfers"). (Complaint at ¶ 125–26).

Debtor also provides labor and services through FCGI, but is not paid directly for those services. For example, Debtor, through FCGI, provides consulting services to Stonemark Management LLC ("Stonemark"); Stonemark pays FCGI $3,000 per month, but FCGI does not pay Debtor for that or any other labor he renders on FCGI's behalf. (Complaint at ¶ 140–41). Instead, Trustee alleges, FCGI

diverts that income into the Trust (the "Stonemark Transfers"). *Id.*

Trustee asserts that several entities controlled by Debtor are mere alter egos through which Debtor funnels money. For example, First Equities Realty, LLC ("FER") was originally owned by the Trust and Debtor. (Complaint at ¶ 127). Debtor unilaterally amended FER's operating agreement in 2004 to state that he is the managing member, entitled to 100% of certain revenues and cash flow. (Complaint at ¶ 128). On January 1, 2008, in what Trustee characterizes as an attempt to divert assets, Debtor, as managing member of FER, assigned all lease payments due under a lease with Nextel South Corp.—$1,983.75 per month—to the Trust for no consideration (the "Nextel Lease Income"). (Complaint at ¶ 129–31). However, Debtor's Schedule I indicates that Mrs. Harman, not the Trust, receives income of approximately $1,950 per month from a "Cell Tower Lease." (Complaint at ¶ 134).

FEP was formed April 14, 1989. (Complaint at ¶ 64). JHH and FEP II were formed December 28, 1989. *Id.* Trustee asserts FEP and FEP II became fully-owned subsidiaries of JHH and, by virtue of his sole ownership of JHH, Debtor controlled all three entities. *Id.* A document dated January 15, 1990, and executed by Debtor as president of JHH, FEP, and FEP II, purports to transfer to Mrs. Harman "all the Assignors' [JHH's, FEP's, and FEP II's] rights and interest in their direct and indirect investment properties' refinancing and sale proceeds"; the document provided that JHH, FEP, and FEP II would retain operational proceeds. (Complaint at ¶ 65–66). Trustee asserts this transfer was made for no consideration, and was honored "only sporadically, and when convenient for his own needs and to enable him to hinder, delay, or

defraud creditors." (Complaint at ¶ 70). For example, though FEP II received sales proceeds in varying amounts from 2004 to 2008, only the sales proceeds from 2004 were actually transferred to Mrs. Harman.(Complaint at ¶ 80–81). Trustee also asserts the document was executed well after January 15, 1990, but backdated; in support, Trustee asserts that the font used in the document—Times New Roman—was not available to the public until 1992. (Complaint at 67–68).

Trustee asserts that Debtor purported to transfer all of his stock in JHH to Mrs. Harman May 31, 2001 (the "Stock Transfer"). (Complaint at ¶ 73). However, Debtor filed a Chapter 7 petition initiating Case No. 99–13224 December 3, 1999, and that case was not closed until June 12, 2001. Trustee argues that, because Debtor did not receive court approval of the Stock Transfer, the Stock Transfer was void. (Complaint at ¶ 74). Notably, JHH's federal tax returns from 2002 through 2010 show Debtor as the 100% owner. (Complaint at ¶ 77). Trustee asserts that Debtor continued to receive, at all relevant times, operational proceeds from JHH, FEP, and FEP II. (Complaint at ¶ 82). And, according to Trustee, Debtor's accountants were not made aware of the Stock Transfer until 2012, after Debtor filed the case (11–57522) under which this proceeding arises. (Complaint at ¶ 84–85). The Complaint alleges that Debtor, at times, claims ownership of JHH, FEP, and FEP II, and at other times disclaims ownership.

On December 20, 1990, FEP, FEP II, and JHH became limited partners of First Concord, L.P. ("First Concord"). (Complaint at ¶ 112). In 2011, Terrace View, an apartment complex in Blacksburg, Virginia, was sold. (Complaint at ¶¶ 156–59). Trustee asserts that Debtor was entitled to receive proceeds from the sale by virtue of Debtor's interests in First Concord, L.P.[2] and New River Valley Associates, Ltd. ("New River Valley")[3] (the "Terrace View Proceeds"). Trustee asserts that the portion of the proceeds owed to JHH through First Concord (the "First Concord Funds"), and ultimately to Debtor as 100% owner of JHH, were instead directed to Mrs. Harman, pursuant to the allegedly invalid 1990 Assignment. (Complaint at ¶ 165). As noted above, Trustee asserts that this assignment is invalid because it has been honored only sporadically, and because it was backdated to 1990 when it was, in fact, executed well after that time. Conveniently, the federal tax returns of JHH listed Mrs. Harman as 100% owner for the first time in 2011, though Debtor had been listed as sole owner in prior tax years.[4] (Complaint at ¶ 83).

Trustee asserts that the amount to which Debtor was entitled by virtue of his interest in New River Valley (the "NRV Funds"), was instead diverted to an account held by Shadrix Lane, P.C. ("Shadrix") in an effort to avoid garnishment.

2. Specifically, Trustee states that Debtor owned 100% of JHH, which owned 100% of FEP II. FEP II owned 37% of First Equities Associates—BH, which, in turn, was a Class B Limited Partner of First Concord. Trustee asserts the net proceeds due Debtor through his interest in JHH is $1,695,362. (Complaint at ¶¶ 163–64).

3. Debtor was a limited partner of New River Valley, with a 3.56% ownership interest. Trustee alleges Debtor was entitled to $257,256 in proceeds by virtue of his interest in New River Valley. (Complaint at ¶¶ 171–73).

4. Trustee notes that Debtor has produced documents purporting to transfer his interest in JHH to Mrs. Harman as of May 31, 2001. However, that transfer, if it occurred, would have taken place during Debtor's prior bankruptcy case, and, without court approval, would be void *ab initio*.

At the time, Debtor was subject to garnishment by Carolyn T. McAfee as executor of the estate of James T. McAfee ("McAfee"). (Complaint at ¶ 176). Smith Conerly, Debtor's long-time counsel, had been served with a summons of garnishment seeking to collect from Smith Conerly any of Debtor's property in Smith Conerly's possession. (Complaint at ¶ 178). Thus, Trustee alleges, Mr. Smith asked his friend, Gregory Shadrix, to hold the NRV Funds in Shadrix's trust account. (Complaint at ¶ 179). The Funds of $257,256.05 were transferred to Shadrix May 25, 2011. (Complaint at ¶ 181). Also on May 25, 2011, Smith Conerly responded to the summons of garnishment in the negative: it was not then in possession of any property of Debtor. (Complaint at ¶ 187). Notably, the Facsimile Transaction Receipt received by Shadrix shows the "reference for beneficiary" of the transfer as "Joe Harmon"; Shadrix's trust account ledger indicates that the funds were received from Smith Conerly. (Complaint at ¶ 182–83). On May 26, 2011, Smith Conerly requested that Shadrix transfer $89,202.18 of the NRV Funds to Smith Conerly, and Shadrix complied.[5] (Complaint at ¶ 188). Trustee reports that he has recovered $168,053.87, the funds held by Shadrix at the time of the petition; however, the $89,202.18 transferred to Smith Conerly has yet to be recovered. (Complaint at ¶ 193–94).

The petition initiating the underlying case was filed June 14, 2011. Trustee asserts that, even during the pendency of this bankruptcy case, Debtor has continued to attempt to divert assets beyond the reach of creditors. For example, in late 2011, after a contractual hold-back period had expired for a portion of the Terrace View proceeds, FEP II was entitled to receive additional funds from the sale (the "Held–Back Concord Funds"). (Complaint at ¶ 197). Instead of being distributed to Debtor, as Trustee asserts it should have been, the Held–Back Concord Funds were diverted to Mrs. Harman under the 1990 Assignment. (Complaint at ¶ 199). Debtor also received additional disbursements by virtue of his interest in New River Valley (the "Held–Back NRV Funds"; together with the Held–Back Concord Funds, the "Held–Back Funds"). (Complaint at ¶ 200).

On December 31, 2012, Debtor and Mrs. Harman caused JHH to sell its 9.9% interest in First Concord, LP and its 6.65% interest in Mark Monro Associates, Ltd., and caused FEP II to sell its 9.9% interest in First Concord, LP and its 0.33% interest in Alpine Self Storage, Ltd., (Complaint at ¶ 90). At the same time, Mrs. Harman sold her 9.9% interest in First Concord, LP, her 0.432% interest in Alpine Self Storage, Ltd., and her 20% interest in Stonemark Management, LLC. *Id.* In December 2012, JHH, FEP, FEP II, and Mrs. Harman sold interests for a total of $987,500 (the "December 2012 Sale Proceeds"), of which $236,205.88 was attributable to the sale of JHH's, FEP's, and FEP II's interests. (Complaint at ¶ 93). Trustee asserts the entire amount of the December 2012 Sale Proceeds are property of the estate.

### Deficiencies in Debtor's Motion

As an initial matter, Debtor's Motion is deficient. It baldly states that the Complaint fails to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), and offers, "This motion to dismiss is supported by the *Memorandum of Law in Support of Motion to Dismiss* ... submitted by [Mrs.

---

5. Moreover, Trustee notes that, after Shadrix requested to know the matter to which the transfer was being made, Smith Conerly replied in an email "Joseph H. Harman ... McAfee". (Complaint at ¶ 189).

Harman, the Trust, JHH, FEP, FEP II, and FCGI].

Pursuant to Fed.R.Civ.P. 7(b), made applicable by Fed.R.Bankr.P. 7007, every motion requesting a court order must "state with particularity the grounds for seeking the order." Bankr.Local Rule 7007–1 (N.D.Ga.) dictates that motions "shall be accompanied by a memorandum of law that cites supporting authority." Debtor's failure to provide support for his requested relief is fatal to Debtor's Motion.

Moreover, the brief of Non–Debtor Movants does not address Counts XXII or XXIII against Debtor, because those counts are not directed at Non–Debtor Movants. In attempting to use Non–Debtor Movants' brief as support for dismissing claims which that brief does not address, Debtor's Motion appears to be frivolous. And, even assuming *arguendo* that Non–Debtor Movants' brief applied to Debtor's Motion to the extent the claims against the two parties overlapped, Debtor's Motion would be denied for the reasons stated below.

### The Complaint

The Complaint asserts twenty four counts against the various Defendants.

In Count I, Trustee seeks declaratory judgment that the Trust is invalid. Trustee argues that Debtor exercises exclusive control of the Trust, is a beneficiary of the Trust, and is the settlor of the Trust; accordingly, Trustee asserts the Trust is invalid. Trustee further alleges that Debtor disregards the formalities of the Trust's form, and uses the Trust to defraud Debtor's creditors.

Count II seeks turnover of all property of the estate held by any Defendant pursuant to 11 U.S.C. § 542. In so seeking, Trustee asserts that the Trust is either invalid or an alter ego of Debtor and that

FEP II and JHH are alter egos of Debtor; therefore, Trustee argues, the assets of the Trust, FEP II, and JHH are property of the bankruptcy estate, and Trustee is entitled to recover those assets on behalf of the estate from any entity now holding such assets. Specifically, Trustee alleges that the Trust assets include the Social Security Transfers; FCGI Distributions Transfers; the Nextel Lease Income; the Stonemark Transfers; the December 2012 Sale Proceeds; the Miscellaneous Trust Transfers; and any other property, money, or assets Debtor caused to be placed in the Trust (collectively, the "Trust Transfers"). Trustee alleges the FEP II assets include the First Concord Funds and the Held–Back Concord Funds. Trustee also seeks turnover of the NRV Funds and the Held–Back NRV Funds.

Under § 542,

"an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

§ 363 authorizes trustee to use, sell, or lease property of the estate, with certain exceptions and restrictions. Thus, § 542 directs any entity in possession of property of the estate to turn over such property to Trustee. By arguing that certain entities are mere alter egos of Debtor, Trustee argues that property of those entities is property of the estate, recoverable under § 542.

Count III seeks avoidance of post-petition transfers of assets held by the Linda J. Harman Irrevocable Trust (the "Trust") on the Petition Date; Count IV seeks recovery of those avoided transfers. Having argued in Count I that the Trust assets are, in fact, Debtor's assets, Trustee as-

serts in Count III that any assets held by the Trust on the Petition Date are estate assets. Thus, Count III seeks to avoid any post-petition transfers of assets held by the Trust on the Petition Date and Count IV seeks to recover those assets for the benefit of the estate.

> 11 U.S.C. § 549(a) provides
>
> "[T]rustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court."

Thus, Trustee may avoid any post-petition transfer that is not authorized by the court or Title 11. 11 U.S.C. § 550 provides

> "[T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

Once Trustee establishes that a transfer is avoidable under § 549, § 550 allows Trustee to recover the value of such transfer from an initial, immediate, or mediate transferee, or the entity for whose benefit the transfer was made.

In Counts V, VI, and VII, Trustee identifies three types of transfers Debtor or his alter egos made into the Trust: Trust Transfers made within ten years of the Petition Date ("Ten–Year Trust Transfers"), Trust Transfers made within four years of the Petition Date ("Four–Year Trust Transfers"), and Trust Transfers made within two years of the Petition Date ("Two–Year Trust Transfers"; together with the Ten–Year Trust Transfers and the Four–Year Trust Transfers, the "Alleged Fraudulent Transfers"). Trustee seeks to avoid the Ten–Year Trust Transfers pursuant to 11 U.S.C. § 548(e)[6], the Four–Year Trust Transfers pursuant to § 544[7] and O.C.G.A. § 18–2–74(a)(1)[8], and the Two–Year Trust Transfers pursuant to § 548(a)(1)(A)[9]. Pursuant to § 550, Count VIII seeks to recover the value of the Alleged Fraudulent Transfers from each Defendant to the extent that such Defendant is the person or entity for whose benefit the Alleged Fraudulent Transfers were made, or to the extent that such Defendant is the immediate or mediate transferee of any of the Alleged Fraudu-

---

**6.** Under § 548(e), Trustee may avoid transfers made within 10 years if such transfers were made by Debtor into a self-settled trust, Debtor is the beneficiary of that trust, and Debtor made the transfer with the intent to hinder, delay, or defraud creditors.

**7.** Under § 544, Trustee may avoid any transfer of property that is voidable by a bona fide purchaser of real property from debtor who perfects such interest, or a creditor that extends credit to Debtor at the time of commencement of the case and that obtains a judicial lien on Debtor's property or an execution against Debtor which is returned unsatisfied (commonly referred to as the "hypothetical lien creditor").

**8.** O.C.G.A. § 18–2–74(a)(1) allows a creditor to avoid a transfer of property if Debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor or if the transfer was made for less than reasonably equivalent value at a time when Debtor's assets were unreasonably small in relation to a contemplated business transaction or when Debtor intended to incur debts beyond his ability to pay.

**9.** Under § 548(a)(1)(A), Trustee may recover any transfer made by Debtor in the two years prior to the Petition Date, if the transfer was made with the intent to hinder or delay creditors.

lent Transfers. Trustee asserts, "On information and belief, one or more Defendants ... may be the entities or persons for whose benefit the Trust Transfers, the Four Year Trust Transfers, and the Two Year Trust Transfers were made or the immediate or mediate transferees of the initial transferees...."

In Count IX, Trustee seeks to make the Trust, JHH, FEP, FEPII, FCGI, and various John Doe defendants liable for Debtor's debts as mere alter egos of Debtor (the "Alter–Ego Defendants"). To state a claim for alter ego liability, Trustee must establish

(1) "that [Debtor's] disregard of the corporate entity made it a mere instrumentality for the transaction of [his] own affairs;"

(2) "that there is such unity of interest and ownership that the separate personalities of the corporation and [Debtor] no longer exist;" and

(3) "To adhere to the doctrine of corporate identity would promote injustice or fraud."

*Dearth v. Collins,* 441 F.3d 931 (11th Cir.2006)(applying Georgia law, and quoting *McLean v. Cont'l Wingate Co.,* 212 Ga.App. 356, 359, 442 S.E.2d 276 (1994)).

In Count X, Trustee seeks a declaratory judgment that Debtor is the sole owner of JHH, FEP, and FEP II, and that Debtor is entitled to any proceeds from the sale of stock of any such entity. Specifically, Trustee asserts that Debtor's attempt to transfer his interest in JHH to Mrs. Harman in 2001 was void *ab initio* because such transfer was attempted, without court approval, while Debtor was a debtor in a previous bankruptcy case. Also, Trustee notes that Debtor's representations on tax returns from 2002 to 2010 show that he is the owner of JHH, and that Debtor has received proceeds from JHH, FEP, and FEP II consistent with his ownership of those entities.

Similar to Counts VI and VII, Counts XI and XII seek to avoid transfers made in the four years and two years preceding the Petition Date, respectively. In Count XI, Trustee asserts that the Alter–Ego Defendants have transferred assets to Mrs. Harman during the four year period prior to the Petition Date (the "Mrs. Harman Transfers"), and, having alleged that the assets of the Alter–Ego Defendants are, in fact, Debtor's assets, Trustee asserts that he may avoid transfers of those assets for less than reasonably equivalent value pursuant to O.C.G.A. 18–2–74(a)(1). Specifically, Trustee asserts those transfers include transfers of the First Concord Funds, the 2/28/08 Transfer, miscellaneous transfers to Mrs. Harman's accounts over the relevant years, the $3,300 Transfer acknowledged by Debtor in his deposition, and any other transfer not yet discovered. Trustee further alleges that the transfers were made "with actual intent to hinder, delay, or defraud Debtor's creditors." In Count XII, Trustee asserts that he can avoid such transfers made within two years of the petition date under 11 U.S.C. § 548(a)(1)(A), which provides

"[T]rustee may avoid any transfer ... of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(A) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was ... indebted[.]"

Pursuant to § 550, Count XIII seeks to recover those transfers or the value of those transfers from Mrs. Harman as the initial transferee and the entity for whose benefit the transfers were made.

In Count XIV, Trustee seeks "substantive consolidation" of the estate of Debtor

with the estates of the Trust, Mrs. Harman, and the Alter Ego Defendants. Trustee argues that "a substantial identity of interests" exist between Debtor, the Trust, Mrs. Harman, and the Alter Ego Defendants, and that the Court may, pursuant to § 105, substantively consolidate their estates. Trustee asserts that such consolidation is necessary "to avoid injustice to creditors."

Count XV seeks declaratory judgment that assets nominally titled in Mrs. Harman's name are, in fact, owned by Debtor, as Debtor "exercises complete dominion and control" over the assets. In turn, Count XVI seeks turnover of those assets as property of the estate. Count XVII seeks to avoid, pursuant to § 549(a), any post-petition transfer of those assets, along with the December 2012 Sale Proceeds and the Held–Back Funds. Count XVIII seeks to recover the value of such transfers from the initial, immediate, or mediate transferees, or the entities for whose benefit such transfers were made.

In Count XIX, Trustee asserts that the transfer of the NRV Funds to Shadrix was made with the actual intent to hinder, delay, or defraud Debtor's creditors, and that such transfer either was made when Debtor was insolvent or rendered Debtor insolvent. Specifically, Trustee asserts that the transfer was made "on the eve of this Bankruptcy Case," while Debtor and Smith Conerly were subject to garnishment. Trustee asserts that $168,053.87 of the NRV Funds have been turned over to Trustee, but $89,202.13 remain outstanding. Accordingly, Count XIX seeks to avoid the transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

In Count XX, Trustee asserts that the transfer of the NRV Funds to Shadrix was made at a time when Debtor was insolvent or that Debtor became insolvent as a result of the transfer, and that the transfer was for less than reasonably equivalent value. Thus, Trustee seeks to avoid the transfer of NRV funds to Shadrix under 11 U.S.C. § 548(a)(1)(B), which provides

> "[T]rustee may avoid any transfer ... of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer or obligation[.]"

Having attempted to avoid the transfer of the NRV Funds to Shadrix in Counts XIX and XX, Trustee seeks, in Count XXI, to recover the NRV Funds under § 550. Count XXI seeks to recover the value of the transfer from Shadrix as initial transferee, from Smith Conerly as immediate or mediate transferee of the initial transferee, and from any Defendant which subsequently received funds as mediate transferee of the initial transferee.

Counts XXII and XXIII are not raised against Non–Debtor Movants and thus are not discussed in Non–Debtor Movants' brief. As Debtor failed to support his Motion with a separate brief, Debtor's attempt to dismiss Counts XXII and XXIII is unsupported. Accordingly, Counts XXII and XXIII will not be discussed, or dismissed, in this order.

Count XIV seeks an accounting, from all Defendants, "of any and all property contributed to the Trust, or into bank accounts titled in the name of the Trust, Debtor's assets, Mrs. Harman's assets, and the assets of JHH, FCGI, FEP, [FEP II], First Concord, Smith Conerly, Huck Smith, and the various John Doe Defendants which are believed to be entities

owned and/or controlled by Debtor or co-conspirators with Debtor.

## Discussion

Bankruptcy Rule 7008 applies Rule 8 of the Federal Rules of Civil Procedure to adversary proceedings.

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.

Fed.R.Civ.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of liability. *Id.* at 556, 127 S.Ct. 1955. "The pleadings are construed broadly, and ... the allegations in the complaint are viewed in the light most favorable to the plaintiff." *Watts v. Florida Int'l University*, 495 F.3d 1289, 1295 (11th Cir.2007) (internal citations omitted).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Whereas the purpose of Fed.R.Civ.P. 9(b) is to ensure that defendants have notice of the conduct complained of in a plaintiff's claim, the Rule may be satisfied where the "complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations." *General Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F.Supp. 1030, 1037 (M.D.Ala.1996). However, in the Northern District of Georgia, "a heightened pleading standard under Rule 9(b) applies to all claims of actual fraud ... but not constructive fraud claims." *Alliant Tax Credit Fund 31–A, Ltd. v. Murphy*, 2011 WL 3156339 (N.D.Ga. July 26, 2011); accord *Kipperman v. Onex Corp.*, 2007 WL 2872463 (N.D.Ga. Sept.26, 2007). Also, in *Kipperman*, the Northern District of Georgia recognized relaxed Rule 9(b) pleading standards for bankruptcy trustees. 2007 WL 2872463 at *23. "Courts generally take a liberal approach when reviewing allegations of fraud pled by a trustee in bankruptcy because, as an outside party to the transactions in issue, the trustee must plead the claim of fraud for the benefit of the estate and its creditors based upon secondhand knowledge." *Id.; see, also, Picard v. Madoff*, 458 B.R. 87 (Bankr. S.D.N.Y.2011) (when a bankruptcy trustee brings a fraudulent transfer claim, "courts in this district take a more liberal view [to Rule 9(b) standards] ... since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge" (internal quotation marks omitted)); *Official Committee of Unsecured Creditors of*

*Fedders N. Am. Inc. v. Goldman Sachs Credit Partners,* 405 B.R. 527, 544 (Bankr. D.Del.2009) ("The requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee ... is asserting the fraudulent transfer claims.").

The District Court in *Kipperman* declined to dismiss fraudulent transfer claims for which the trustee failed to allege a date, amount, or description of the relevant transfers. Other courts applying this type of relaxed standard have held that a pleading is sufficient if it gives the defendant "a reasonable opportunity to answer the complaint and ... adequate information to frame a response[.]" *Tolz v. United States,* 2010 WL 2812944 at *5 (Bankr. S.D.Fla.2010).

### A. Trustee's *Motion for Leave to File a Sur–Reply*

Non–Debtor Movants filed their Motion August 28, 2013. Trustee filed a response to Non–Debtor Motion September 23, 2013 (Doc. No. 36). Non–Debtor Movants replied to the response October 14, 2013 (Doc. No. 48). On October 25, 2013, Trustee filed a *Motion for Leave to File a Sur–Reply,* and attached as an exhibit a sur-reply (Doc. No. 51) (the "Sur–Reply Motion"). Non–Debtor Movants filed their *Opposition to Trustee's Motion for Leave to File Sur–Reply* November 5, 2013.

■ "[T]o permit the filing of a surreply is purely discretionary and should generally only be allowed when 'a valid reason for such additional briefing exists.'" *First Specialty Ins. Corp. v. 633 Partners, Ltd.,* 300 Fed.Appx. 777 (11th Cir.2008) (quoting *Fedrick v. Mercedes–Benz USA, LLC,* 366 F.Supp.2d 1190, 1197 (N.D.Ga.2005)). Valid reasons include "where the movant raises new arguments in its reply brief." *Id.*

■ Trustee argues that a sur-reply is necessary because Non–Debtor Movants raised new issues in their reply brief: (1) the effect of a Georgia Court of Appeals case—*Holiday Hospitality Franchising, Inc. v. Noons,* 324 Ga.App. 70, 749 S.E.2d 380 (2013)—decided after Trustee's response brief was due; and (2) Non–Debtor Movants' "accusations that Trustee misrepresented the law."

Non–Debtor Movants apparently concede that new caselaw might justify a sur-reply in certain circumstances, but argue that Trustee overstepped his bounds in two respects. First, Non–Debtor Movants argue that *Noons* is a one-page decision that applies a prior Georgia Supreme Court decision and requires little additional briefing; Non–Debtor Movants assert that Trustee instead uses the bulk of the sur-reply to rehash previously briefed arguments. Second, Non–Debtor Movants object to Trustee filing the sur-reply as an exhibit to the Sur–Reply Motion, because doing so is tantamount to filing the sur-reply without leave of the Court.[10]

Non–Debtor Movants argue that the latter of Trustee's "new issues"—"accusations that Trustee misrepresented the law"—is not a new issue; rather, Trustee is referring to Non–Debtor Movants' discussion on the interpretation of relevant law. Non–Debtor Movants assert that the Sur–Reply is an attempt by Trustee to get "second bite at the apple" to argue in favor of Trustee's interpretation of the law.

After considering the parties' respective arguments, the sur-reply will considered only to the extent it discusses *Noons.*[11]

---

**10.** Because the sur-reply was an exhibit to the Sur–Reply Motion, and was not incorporated into the body of the Sur–Reply Motion, the issue of whether to allow the sur-reply was considered before reading the sur-reply.

**11.** To the extent Non–Debtor Movants are concerned that the disallowed remainder of

The parties' disagreement over application of the law is not a "new issue" which warrants supplemental briefing.

## B. Counts I and IX

Though legally distinct, Counts I and IX will be discussed first and together, as the basis of many of Trustee's subsequent claims. Count I seeks a declaratory judgment that the Trust is invalid, and Count IX seeks to disregard the form of the Trust, JHH, FEP, FEP II, FCGI, and various John Doe defendants as mere alter egos of Debtor. Many of Trustee's claims rely on the assertion that the property of the Trust, JHH, FEP, FEP II, FCGI, and the various John Does is in fact Debtor's property and, consequently, property of the estate. Thus, the disposition of Counts I and IX will reverberate through the remainder of this order.

■ As an initial matter, Non–Debtor Movants assert that a declaratory judgment is inappropriate under the circumstances because a declaratory judgment is inappropriate when the determinations will be adjudicated under other claims, citing *Ven–Fuel, Inc. v. Dept. of the Treasury,* 673 F.2d 1194, 1195 (11th Cir.1982). As Non–Debtor Movants point out, a declaratory judgment "under the Declaratory Judgment Act is appropriate only where the judgment will 'serve a useful purpose in clarifying and settling the legal relationships in issue [or] . . . will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.' " Non–Debtor Movants' Memorandum in Support of Motion to Dismiss at ¶ 7, quoting *Soroka v. Lee Tech. Servs.,*

*Inc.,* 2006 WL 1734277, at *3 (N.D.Ga. June 19, 2006). "A district court has substantial discretion in deciding whether to entertain a declaratory judgment action, even if the action properly falls within the court's jurisdiction." *Soroka,* 2006 WL 1734277 at *3.

■ Non–Debtor Movants assert that declaratory judgments in this case are inappropriate because (1) the determinations are duplicative of those sought in other claims and (2) such declarations will not change the parties' prospective behavior. To the extent Non–Debtor Movants seek to dismiss claims for declaratory judgments as duplicative with the elements of other counts,[12] that argument will be taken under advisement if and when this case reaches the judgment stage; entertaining the declaratory judgment claims falls within the considerable judgment afforded. To the extent Non–Debtor Movants argue that the claims will not "prevent accrual of avoidable damages," their argument appears misguided at this stage. Trustee has asserted continuing diminution of the bankruptcy estate caused by Non–Debtor Movants' continued postpetition transfers. Trustee's ability, for example, to invalidate the trust does weigh upon the parties' future actions.

■ To invalidate the Trust in Count I, Trustee argues that the legal and equitable interests of Debtor and the Trust have merged, and that, in any event, Georgia law does not enforce spendthrift clauses in trusts to the extent of Debtor's contributions to the Trust. To establish that the

---

Trustee's sur-reply might somehow taint this decision, Non–Debtor Movants' brief in opposition to the sur-reply would mitigate any prejudicial effect, because, like the sur-reply, the bulk of the opposition brief is dedicated to arguing prior caselaw. It, too, will be disregarded.

12. If the counts are, indeed, duplicative, what is the benefit of dismissing the declaratory judgment count only to have a ruling on the same issue decided as part and parcel of another claim?

Trust and Debtor's legal and equitable interests have merged, Trustee must establish that Debtor is the sole Trustee and sole beneficiary. *Phillips v. Moore*, 286 Ga. 619, 690 S.E.2d 620 (2010) (holding that a settlor is a sole beneficiary if he retains an unrestricted power of appointment, even if the trust names contingent beneficiaries to take the trust corpus if the settlor fails to exercise his power of appointment); *Speed v. Speed*, 263 Ga. 166, 167, 430 S.E.2d 348 (1993); *Smith v. Francis*, 221 Ga. 260, 266, 144 S.E.2d 439 (1965) (declaring valid a trust with multiple trustees and discretionary beneficiaries).

Trustee asserts that Debtor is the sole trustee of the Trust. Though the Trust names Mrs. Harman and Debtor co-trustees, Trustee argues that the Trust instrument precludes Mrs. Harman from being a trustee; thus, Trustee asserts that Debtor has "exclusive and complete dominion and control over all aspects of the Trust[.]" The Trust provides, in relevant part

> Notwithstanding anything herein to the contrary, [Mrs. Harman] shall never be permitted to serve as a Trustee or Co–Trustee hereunder, and [Mrs. Harman] shall not have any power, exercisable alone or in conjunction with any person, either (1) to designate the persons who shall possess or enjoy the trust property or the income therefrom, or (2) to alter, amend, revoke or terminate any beneficial interest or right to enjoyment in the trust property.

(Complaint, Exhibit 2 at p. 8).

Non–Debtor Movants assert that the above language does not preclude Mrs. Harman from serving as a trustee; rather, it precludes Mrs. Harman from designating additional beneficiaries or terminating the rights of existing beneficiaries in her role as trustee. Construing the facts in the light most favorable to Trustee, that provision does not support Non–Debtor Movants' argument; the provision is a compound sentence, representing two independent clauses, such that Mrs. Harman cannot be a trustee in the Trust, and Mrs. Harman cannot name new beneficiaries or terminate existing beneficiaries in any capacity. Thus, Trustee has plausibly alleged that Debtor is the sole trustee of the Trust.

Trustee also argues that Debtor is the actual or *de facto* settlor of the Trust, because "all of the assets and property ... contributed to the Trust were generated through Debtor's efforts." Comment F to the *Restatement (Second) of Trusts § 156* provides further insight: To find that a beneficiary is the settlor of the Trust, "[I]t is not necessary that the beneficiary shall have himself conveyed the property held in trust. It is sufficient that he paid the purchase price for a conveyance upon a trust, of which he is the beneficiary[.]" The comment provides a hypothetical as illustration:

> In consideration of the payment of $10,000 by A to B, B transfers Blackacre to C in trust to pay the rents and profits to A during his life, and to convey Blackacre to D on A's death. At A's request B inserts a provision in the trust deed to the effect that A's interest should not be transferable by him or subject to the claims of his creditors. A can transfer his interest; his creditors can reach his interest.

The facts of that hypothetical bear a striking resemblance to the instant allegations. Trustee contends that Debtor gave Mrs. Harman funds to establish the Trust, which contains provisions giving Debtor unfettered discretion to distribute funds to himself. In the *Restatement* hypothetical, creditors are able to reach those funds notwithstanding a spendthrift provision. Construing the allegations in the light most favorable to Trustee, Trustee has

properly alleged that Debtor is the settlor of the Trust. Trustee alleges that Debtor gave to Mrs. Harman funds with which Mrs. Harman funded the Trust. The hypothetical above illustrates the possibility that Debtor is the settlor because he gave Mrs. Harman the funds to set up a trust in which he is named as beneficiary. Whether Mrs. Harman had the right to use those funds as she pleased between receiving them and setting up the Trust is a matter of fact not appropriate for the Motion to Dismiss stage.

Because of Debtor's alleged exclusive control of the Trust, Trustee argues that any beneficial interest of Mrs. Harman is "illusory and wholly contingent on Debtor's discretion." The Trust instrument provides Trust assets will be used to provide for Mrs. Harman's and Debtor's maintenance and support until their respective deaths and, after both have passed, the Trust will be divided equally among Catherine O'Neill McCord, Michael Scott O'Neill, Cheryl J. Dolan, and Kathy J. Giles. Notwithstanding that language, Trustee argues that Debtor has sole discretion to distribute the entire trust corpus to himself, making the other beneficiary interests illusory.

The Supreme Court of Georgia has provided some guidance as to when a trustee is a "sole beneficiary" notwithstanding other named beneficiaries. In *Avera v. Avera*, 253 Ga. 16, 315 S.E.2d 883 (1984), the Supreme Court found that a settlor was not a sole beneficiary where the trust provided that the settlor would receive trust *income* during his lifetime, with the remainder to fall to his children. The settlor had discretion to "delete" the other beneficiaries and appoint a successor beneficiary other than himself, his estate, or his creditors. The court reasoned that, because the settlor could assign a new remainder beneficiary other than to "[the settlor] himself, his estate, or his creditors," then, "there must always be at least one beneficiary in addition to the settlor." In addressing the argument that the settlor had discretion to reach the trust corpus during his lifetime, the *Avera* court stated, "While we acknowledge . . . trustee [has discretion] to encroach upon the corpus, . . . he may do so only in the limited circumstances of misfortune, illness, accident, or infirmity, and for necessary sums when there are no other funds reasonably available[.]" The Supreme Court noted, "This provision does not empower the trustee to invade the corpus with unlimited discretion." *Id.* (citing *Restatement of the Law Second, Trusts, 2d § 156(b)* ). Comment E to the Restatement (Second) of Trusts § 156 notes, "Where by the terms of the trust a trustee is to pay the settlor or apply for his benefit as much of the income or principal as the trustee may in his discretion determine, his . . . creditors can reach the maximum amount which the trustee could pay to him or apply for his benefit."

In *Phillips v. Moore*, the Supreme Court of Georgia was tasked with resolving a question:

> Whether a settlor of a trust is a sole beneficiary, such that creditors may reach the corpus of the trust, when the trust instrument gives the settlor no right to the corpus during his lifetime but provides him with a general power to appoint the trust corpus as he sees fit in his will and names specific beneficiaries to receive the corpus of the trust in the event that the settlor does not exercise his power of appointment.

*Phillips v. Moore*, 286 Ga. 619, 690 S.E.2d 620 (2010).

The *Phillips* court answered in the affirmative—such a settlor is a sole beneficiary because "the settlor retains a general power of appointment enabling him to dispose

of the trust property to anyone[.]" *Id.* at 620, 690 S.E.2d 620.

Though *Avera* and *Phillips* are not directly on point because they directly address powers of appointment of beneficiaries, the *Avera* court's discussion of the settlor's discretion to distribute the trust corpus to himself reflects at the analogous power in this case. Debtor cannot remove and reappoint beneficiaries of the Trust, but, according to Trustee, he can preclude distribution to other beneficiaries by virtue of his exclusive and unchecked discretion to distribute the Trust corpus. That is, if he distributes the entire Trust corpus to himself, he can then do as he pleases. "Trustees may . . . make such distributions in such amounts and proportions or installments and at such time as they, in their sole discretion, deem proper." (Complaint, Ex. 2—Trust Instrument at 11). However, to argue that Debtor has unfettered discretion to distribute the entire Trust corpus to himself ignores the language of the Trust, which states,

> No person who shall be serving as a Trustee or Co-Trustee of any trust created hereunder may participate in any discretionary decision of the Trustee to: (1) allocate corpus to themselves as a beneficiary of such trust except as such power of the Trustee is limited by an ascertainable standard relating to the health, education, support, or maintenance of himself or herself.

(Complaint, Ex. 2—Trust Instrument at 5). This restriction is analogous to the restriction in *Avera*. Moreover, Trustee admits that the Trust has been distributing funds to Mrs. Harman to pay for the house and household expenses of Mrs. Harman and Debtor; thus, Trustee's allegations show that Mrs. Harman is an actual beneficiary of the Trust. Accordingly, Debtor is not a sole beneficiary of the Trust, and Trustee's "merged interests" argument fails.

■ Despite Mrs. Harman's status as a beneficiary, Trustee may be able to reach certain assets of the Trust. O.C.G.A. § 53–12–80 provides, "If a beneficiary is also a contributor to the trust, a spendthrift provision shall not be valid as to such beneficiary to the extent of the proportion of trust property attributable to such beneficiary's contribution." Trustee has repeatedly asserted that many of the assets contributed to the Trust were contributed by Debtor, or were diverted there by Debtor. *See, e.g.,* Complaint at ¶ 100 ("all of the assets, funds, and property that have been contributed to the Trust have ultimately been generated through Debtor's efforts"); Complaint at ¶¶ 124—126, 138—143 (Debtor provides services through FCGI, which is 99% owned by Trust and 1% owned by Debtor. Compensation for those services are paid to FCGI, and then to the Trust—Debtor does not receive a salary or the 1% distribution to which he has an interest).[13] Non-Debtor Movants argue that the Trust is a valid and enforceable spendthrift trust, and therefore Debtor's beneficial interest cannot be reached by creditors. Under § 541(c)(2), "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Because § 541(c)(2) restricts the transfer of Debtor's beneficial interest to the extent the Trust is *enforce-*

---

**13.** Non-Debtor Movants assert that Trustee has not alleged with particularity which assets of the Trust were contributed by Debtor, citing *In re Bradley,* 501 F.3d 421, 430 (5th Cir.2007) (applying Texas law), in which the 5th Circuit affirmed the District Court's affirmation of the Bankruptcy Court's ruling that the trustee had failed to meet his burden of tracing trust assets to Debtor. However, the Bankruptcy Court's ruling came after trial, and not at the motion to dismiss stage.

*able,* § 541(c)(2) is unavailing to the extent that Trustee argues the Trust is *unenforceable.* Construing the Complaint in the light most favorable to Trustee, it is clear that the Trust's spendthrift provision is unenforceable at least to the extent of Debtor's contributions to the Trust.

In Count IX, Trustee asserts that the Trust, JHH, FEP, FEPII, FCGI, and various John Doe defendants are mere alter egos of Debtor. Non–Debtor Movants argue that Trustee is attempting to recover under a legal theory known as "reverse veil piercing," which, Non–Debtor Movants argue, "has been rejected in Georgia since the Georgia Supreme Court's decision in *Acree v. McMahan* [, 276 Ga. 880, 881, 585 S.E.2d 873 (2003) ]." In traditional veil piercing, a corporation's creditor attempts to hold an insider of the corporation liable for the corporation's debts. *See, Acree,* 276 Ga. at 881, 585 S.E.2d 873 (citing Gregory Crespi, *The Reverse Piercing Doctrine: Applying the Appropriate Standards,* 16 J. Corp. L. 33, 37 (1990)). In reverse piercing, the corporation would be held liable for the debts of the insider. *Id.* In *Acree,* the court stated, "We reject reverse veil piercing, at least to the extent that it would allow an 'outsider,' such as a third-party creditor . . . to reach a corporation's assets to satisfy claims against an individual corporate insider." [14] *Id.*

Trustee argues that *Acree* and subsequent Georgia decisions acknowledge that reverse veil piercing may be appropriate "in the absence of adequate remedies at law," citing *Acree,* 276 Ga. at 883, 585 S.E.2d 873; *Carrier 411 Servs., Inc. v.*

*Insight Tech., Inc.,* 322 Ga.App. 167, 744 S.E.2d 356 (2013); and *Baillie Lumber Co. v. Thompson,* 279 Ga. 288, 292, 612 S.E.2d 296 (2005). Non–Debtor Movants contend that these cases do not support Trustee's conclusion, because *Acree's* plain holding rejected reverse veil piercing, *Carrier* discussed a statutory garnishment action rather than veil piercing, and *Baillie* discussed *traditional* veil piercing. Movants also cite to *Holiday Hospitality Franchising v. Noons,* 324 Ga.App. 70, 749 S.E.2d 380 (2013), in which the Georgia appellate court declined to carve out an exception to allow reverse piercing in the case of fraud.

The parties' disagreement over the caselaw is not surprising. *Acree* states, "We reject reverse piercing . . ." but then quotes with approval *Floyd v. IRS,* 151 F.3d 1295, 1300 (III) (10th Cir.1998) to say, "[disregard of the corporate form] is appropriately granted only in the absence of adequate remedies at law." Though the issue in *Carrier* was not reverse piercing, the case's brief discussion of reverse piercing highlights that *Acree's* holding is unclear, and provides insight into how Georgia courts would apply *Acree. Carrier* states, "there is no cause of action in Georgia for 'reverse-piercing' the corporate veil[.]" 322 Ga.App. at 170, 744 S.E.2d 356 (citing *Acree* ). However, the *Carrier* court continues, "The Supreme Court [in *Acree* ] refused to recognize a plaintiff's 'reverse-piercing' claim as an equitable cause of action *because there were other adequate remedies available at law." Id.* (emphasis added). The appellate court apparently reads into *Acree* the possibility of

---

**14.** The *Acree* court's use of "outsider" is an explicit reference to the two reverse piercing situations described in *The Reverse Piercing Doctrine: Applying the Appropriate Standards,* 16 J. Corp. L. 33, 37(II)(A)(1990). Per that article, in "outsider reverse piercing" a creditor seeks to hold a corporation liable for debts of an insider. In "insider reverse piercing" insiders disregard the corporate entity "to avail the insider of corporate claims against third parties" or shelter corporate assets against claims by third parties using protections available only to the insider's assets.

an exception to *Acree's* rejection of reverse piercing: "'[A claim for reverse-piercing of the corporate veil] is appropriately granted only in the absence of adequate remedies at law.'" *Carrier*, 322 Ga.App. at 170, 744 S.E.2d 356 (*Carrier*'s quotation of *Acree* supplies the bracketed text). Thus, the Georgia appellate court recognizes, "in the absence of adequate remedies at law," reverse-piercing may be "appropriately granted." It is unclear at present whether adequate remedies at law exist; therefore, dismissal is inappropriate on those grounds.

 Non–Debtor Movants also argue that the alter ego claim must fail as to the Trust because a Trust is not an entity to which veil piercing may apply. Non–Debtor Movants point to *In re Vebeliunas*, 252 B.R. 878, 885 (Bankr.S.D.N.Y.2000), in which the Bankruptcy Court for the Southern District of New York declined to entertain a veil piercing claim raised against a trust, reasoning, "a trust, being a relationship, cannot have an alter ego, which would be akin to saying that someone is the 'alter ego' of a contract." Trustee cites a number of cases which, he says, *do* allow an alter-ego claim against a trust. The District Court for the Eastern District of New York stated, "there is no policy reason why veil piercing would apply only to corporations but not to trusts." *United States v. Evseroff*, 2012 WL 1514860 (E.D.N.Y. Apr. 30, 2012) (applying New York law); *see, also, In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir.2010) (applying California law to determine that a trust was an alter ego of the debtor); *United States v. Hart*, 2006 WL 3377626 (D.Ariz. Oct. 19, 2006) (applying Arizona law, but citing *United States v. Lodi*, 1998 WL 667909, at *——, *——, 1998 U.S. Dist. LEXIS 13265, at *1, *22 (E.D.Ca. Aug. 14, 1998)). Neither party cites precedent applying Georgia law, or precedent otherwise binding on this court.

Non–Debtor Movants quote *Vebeliunas* as stating

> The alter ego theory and doctrine of "piercing the corporate veil" originated strictly as devices of corporate law because a corporation has limited liability. They were developed in corporate law as equitable remedies to prevent injustice when shareholders seek to use the corporation to escape their personal liability. In other words, the theory developed to prevent one entity, the shareholder, from using another entity, the corporation, as a shield against liability that is truly the obligation of the shareholder.

252 B.R. at 887. The *Evseroff* court notes the same policy reasons for the doctrine, and notes that the policy "applies equally to trusts." *Evseroff*, 2012 WL 1514860 at *13. The *Evseroff* court is correct; without controlling precedent to the contrary, Count IX, as it relates to the Trust, is not precluded at this stage.

 As explained above, Trustee's alter ego claim does not appear futile in theory. Even so, Trustee must have properly pleaded the alter ego claim to survive the Non–Debtors' Motion. In order to show that an entity is a mere alter ego of Debtor, Trustee must plead that (1) Debtor disregarded the respective corporate entities such as to make them "mere instrumentalit[ies]" for the transaction of Debtor's own affairs; that (2) "there is such unity of interest and ownership that the separate personalities of the corporation and [Debtor] no longer exist;" and that (3) recognizing the corporate entity would "promote injustice or fraud." *Dearth v. Collins*, 441 F.3d 931 (11th Cir. 2006). Trustee directly asserts each of the elements of alter ego liability as recited in *Dearth;* however, "a formulaic recitation

of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Thus, Trustee must provide support for those assertions with allegations of fact. He does. The overall scheme asserted in the complaint raises a plausible claim that each of the alter ego defendants were manipulated and controlled by Debtor in a scheme to divert funds away from the reach of creditors. FCGI is implicated by virtue of its diversion into the Trust funds which properly belong to Debtor. Debtor's control of JHH is shown by purported transfers to Mrs. Harman for no consideration, and alleged invocation of the JHH Stock Transfer only when convenient for Debtor. FEP and FEP II, as wholly-owned subsidiaries of JHH, are similarly implicated. Further, Trustee alleges Debtor shares a unity of interest with the corporate defendants, because he alleges that Debtor is the sole owner of each FCGI, JHH, FEP and FEP II. Our discussion above, finding that Mrs. Harman is a beneficiary of the Trust, does not preclude a finding that the Trust shares a unity of interest with Debtor. If Trustee's allegations are true and Debtor has diverted all income and assets into the Trust, it would support the contention that Debtor shares a unity of interest with the Trust. Trustee has alleged that Mrs. Harman has no income, so, without the Trust, Debtor would be responsible for maintenance and support of himself and his wife—exactly what the Trust provides. Moreover, the final element—that recognizing the respective legal forms of the alter ego defendants would promote injustice or fraud—is clearly pleaded. Trustee alleges a scheme by which Debtor has diverted all assets and income through his corporate alter egos into the Trust to put such assets beyond the reach of creditors.

### C. Count II

■ Count II seeks turnover of all property of the estate held by any Defendant pursuant to 11 U.S.C. § 542. Of course, § 542 plainly provides that any entity holding property of the estate must turn such property over to Trustee, so to state a claim for turnover, Trustee merely needs to plausibly allege that the respective property is property of the estate.

Trustee asserts in Count I that the Trust is invalid and asserts in Count IX that the Trust, FEP II, and JHH are alter egos of Debtor, Trustee argues that property of those Defendants are properly considered property of Debtor and, therefore, property of the estate. Because Trustee has plausibly alleged that he is entitled to turnover of certain property of the Trust and property of FEP II and JHH, the Motions will be denied with respect to Count I and Count IX.

Specifically, Trustee alleges that the Trust assets subject to turnover include the Social Security Transfers; FCGI Distributions Transfers; the Nextel Lease Income; the Stonemark Transfers; the December 2012 Sale Proceeds; the Miscellaneous Trust Transfers; and any other property, money, or assets Debtor caused to be placed in the Trust (collectively, the "Trust Transfers"). Trustee alleges the FEP II assets include the First Concord Funds and the Held–Back Concord Funds. Trustee also seeks turnover of the NRV Funds and the Held–Back NRV Funds.

### D. Counts III and IV

■ Count III seeks avoidance of post-petition transfers of assets held by the Trust on the Petition Date pursuant to 11 U.S.C. § 549(a); Count IV seeks recovery of those avoided transfers pursuant to § 550. To establish a claim under § 549(a), Trustee must allege that (1) the transferred property is property of the

estate, (2) the transfer occurred after commencement of the case, and (3) the transfer was not authorized by the Court or Title 11, or was authorized only under § 303(f) or 542(c). Having argued in Count I and Count IX that the Trust assets are, in fact, Debtor's assets, Trustee has properly alleged that assets of the Trust on the petition date became property of the estate. No postpetition transfers of property have been authorized, whether from the Trust or otherwise. Trustee has generally alleged that such post-petition transfers occurred, "on information and belief." Given the pattern of conduct alleged in the Complaint, Trustee's allegations "raise a reasonable expectation" that discovery may reveal transfers from the Trust to other Defendants. *See, Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. In fact, Trustee alleges such postpetition transfers occurred in Debtor's prior bankruptcy case. Thus, Trustee has pleaded that any post-petition transfers of property from the Trust are avoidable under § 549(a). If such transfers are revealed, § 550 would allow Trustee to recover the value of any transfer avoided under § 549 from the initial, immediate, or mediate transferee, or the entity for whose benefit the transfer was made.

### E. Counts V, VI, VII, and VIII

To avoid the Ten–Year Trust Transfers under § 548(e)(1), Trustee must allege that transfers were made within ten years prior to the Petition Date, and that the Trust is a self-settled trust or similar device, that the transfer was by Debtor, that Debtor is the beneficiary of such trust or similar device, and that Debtor made such transfer with the actual intent to hinder, delay, or defraud creditors.

A self-settled trust is "[a] trust in which the settlor is also the person who is to receive the benefits from the trust, usually set up in an attempt to protect the trust assets from creditors." *Black's Law Dictionary,* 8th Edition. As discussed above, Trustee has properly alleged that Debtor may be the settlor of the Trust, and, of course, Debtor is a beneficiary of the Trust. Thus, Trustee has alleged that the Trust is a self-settled trust. Trustee has alleged a number of transfers from Debtor to the Trust, made with the intent to hinder, delay, or defraud Debtor's creditors (for example, the Stonemark Transfers). Moreover, Trustee alleges in Count IX that certain entities are mere alter egos of Debtor; as a result, transfers from those alter ego entities into the Trust may also have been made by Debtor. And, as above, the pattern of conduct alleged raises a plausible expectation that evidence of more such transfers may emerge in discovery. Thus, Count V is not ripe for dismissal.

To avoid the Four–Year Trust Transfers under § 544 and O.C.G.A. § 18–2–74(a)(1), Trustee must allege that the transfer was made "by a debtor" with the intent to hinder or delay a creditor or without receiving reasonably equivalent value in exchange when debtor was either "engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or when Debtor "intended to incur, or believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay as they became due."

As stated above, a bankruptcy trustee enjoys a relaxed standard of pleading with respect to allegations of fraudulent transfers. In this case, Trustee has alleged that Debtor made certain transfers into the Trust with the intent to place those assets beyond the reach of creditors—for example, the Social Security transfers, dis-

tributions to which Debtor was entitled from FCGI, and the Miscellaneous Trust Transfers. Moreover, as above, Trustee alleges that transfers from the alter ego defendants into the Trust were made "by Debtor," such as the remaining FCGI distributions. It is clear that dismissal of Count VI is not appropriate at this stage.

■ To avoid the Two–Year Trust Transfers under § 548(a)(1)(A), Trustee must allege that "[D]ebtor voluntarily or involuntarily—(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud" Debtor's creditors. Trustee has alleged that the entire scheme of transferring Debtor's assets into the Trust was conducted with the intent to hinder Debtor's creditors. And, as above, Trustee's allegations of specific transfers, and of a general scheme of transferring funds to the Trust in order to place funds beyond the reach of creditors, raise a plausible expectation that more evidence will be uncovered.

Once Trustee alleges that post-petition transfers may be avoided under §§ 544 and 548, Trustee may recover the transferred property or the value of such property under § 550. To recover property under § 550, Trustee must allege that a Defendant was the initial, immediate, or mediate transferee of such property, or the entity for whose benefit the transfer was made. In Count VIII, Trustee appears to seek the value of the transfers from the Trust as initial transferee, and, from other Defendants to the extent those Defendants are the entities for whose benefit the transfers were made, or are immediate or mediate transferees of the transfers.

### F. Count X

■ In Count X, Trustee seeks an order declaring that Debtor is the sole owner of JHH, FEP, and FEP II. Trustee asserts that the May 31, 2001 transfer of JHH stock to Mrs. Harman was void *ab initio* because the transfer occurred during Debtor's prior bankruptcy case, and Debtor failed to obtain court approval for the transfer.

■ "It is the law of this Circuit that actions taken in violation of the automatic stay are void and without effect." *U.S. v. White*, 466 F.3d 1241 (11th Cir.2006) (internal quotation marks omitted). § 362(a)(3) prohibits "any act to obtain possession of property of the estate" as violating the stay. Thus, absent court order or authority from the Code, a transfer of the stock of JHH would be void *ab initio* if made while the automatic stay applied to that property. Accordingly, Count X will not be dismissed at this stage.

### G. Counts XI, XII, and XIII

■ In Count XI, Trustee seeks to avoid transfers made to Mrs. Harman within four years of the Petition Date. To avoid such transfers under § 544 and O.C.G.A. § 18–2–74(a)(1), Trustee must allege that Debtor made the transfers with the intent to hinder or delay a creditor or without receiving reasonably equivalent value in exchange when debtor was either "engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or when Debtor "intended to incur, or believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay as they became due." In support of avoiding transfers made to Mrs. Harman within four years of the Petition Date, Trustee asserts that Debtor made transfers to Mrs. Harman to put such property beyond the reach of creditors. Trustee points to certain individual transfers—*e.g.* the $3,300

transfer and the First Concord Funds Transfer—and asserts a general scheme sufficient to raise a plausible expectation that discovery will reveal further evidence of transfers. Thus, Count XI will not be dismissed. And, because the elements of fraudulent transfer under O.C.G.A. § 17-2-74(a)(1) also satisfy the elements of § 548(a)(1)(A) [15] to the extent such transfers occurred within *two* years of the Petition Date, Count XII will not be dismissed.

As § 550 allows Trustee to recover the value of transfers avoided under §§ 544 and 548 from the initial, immediate, or mediate transferees of such transfer, or from the entity for whose benefit the transfers were made, Trustee has sufficiently pleaded for recovery of the transfers in Counts XI and XII from Mrs. Harman as initial transferee, and recovery from any subsequent transferee as immediate or mediate transferee.

### H. Count XIV

■ In Count XIV, Trustee seeks "substantive consolidation" of the estate of Debtor with the estates of the Trust, Mrs. Harman, and the Alter Ego Defendants, pursuant to the court's equitable powers under § 105. Trustee argues that the 11th Circuit has held, "bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers," quoting *Eastgroup Properties v. Southern Motel Ass'n, Ltd.*, 935 F.2d 245 (11th Cir.1991). Though *Eastgroup* involved consolidation of two bankruptcy cases, Trustee points out that the Supreme Court has tacitly approved substantive consolidation of a non-debtor entity in *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 218, 61 S.Ct. 904, 85 L.Ed. 1293 (1941), which held, after the bank-

ruptcy court ordered that property of the non-debtor corporation was property of the debtor's bankruptcy estate, that a creditor of the non-debtor corporation was entitled only to "*pari passu* participation with [debtor's] individual creditors." *See, also, Reider v. Fed. Deposit Ins. Corp.*, 31 F.3d 1102 (11th Cir.1994) (Noting that, in *Sampsell*, "the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates"). In *Sampsell*, the Supreme Court stated, "The power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete." *Sampsell*, 313 U.S. at 219, 61 S.Ct. 904.

■ Trustee further notes that at least one bankruptcy court in this district has declined to foreclose, at the motion to dismiss stage, the possibility of substantive consolidation of the estates of a debtor and a non-debtor when presented with allegations that the assets of the entities were co-mingled or otherwise inseparable. *See, Matter of Munford, Inc.*, 115 B.R. 390 (Bankr.N.D.Ga.1990) (J. Drake); *see, also, In re Bonham*, 229 F.3d 750 (9th Cir.2000) (consolidating the estate of the debtor with two non-debtor entities for the express purpose of allowing the bankruptcy trustee to pursue fraudulent transfer actions through those entities, on a finding that the non-debtors were mere instrumentalities with no separate existences of their own). Surveying the cases, it is clear that the appropriateness of substantive consolidation is necessarily reliant on the equities of each case's particular facts, and the possibility that equity favors substantive consolidation of a debtor with its non-debtor counterpart is not precluded *per se*. As weighing the relative equities of the situa-

---

**15.** Under § 548(a)(1)(A), Trustee must allege that "[D]ebtor voluntarily or involuntarily— (A) made such transfer or incurred such obli-

gation with actual intent to hinder, delay, or defraud" Debtor's creditors.

tion requires findings of fact inappropriate at the pleading stage, Count XIV will not be dismissed if Trustee has adequately pleaded the elements of substantive consolidation.

■■■ In order to substantively consolidate entities, the proponent must show substantial identity of entities and that injustice or harm to creditors may occur in the absence of consolidation. *Eastgroup Properties*, 935 F.2d at 249; *Reider*, 31 F.3d at 1107–08. Such showing raises a presumption that creditors have not relied solely on the credit of one of the entities involved, and the burden shifts to an objecting creditor to show reliance on the separate credit of one of the entities, and that prejudice will occur if the estates are consolidated. *Id.* In this case, Trustee has clearly alleged facts sufficient to shift the burden of persuasion. Other creditors' reliance on the separateness of Debtor and Non–Debtor Movants is not apparent on the face of the Complaint, nor are prejudices to other creditors or the balance of equities resulting, accordingly, the Motion to Dismiss will be denied with respect to Count XIV.

### I. Counts XV, XVI, XVII, XVIII

■■■ Count XV seeks declaratory judgment that the house and certain cash or investment accounts nominally titled in Mrs. Harman's name are, in fact, owned by Debtor, as Debtor "exercises complete dominion and control" over the assets. In support of reclaiming the assets, Trustee cites *In re IFS Fin.Corp.*, 669 F.3d 255 (5th Cir.2012) for the proposition that legal title is irrelevant when "[Debtor] ha[s] the ultimate power to transfer [the property] to others." *IFS* bases its discussion of ownership interests in Texas law, and thus

may be valuable to this discussion by analogy. Nevertheless, it is clear that legal title to property is not dispositive as to what constitute's "property of the estate" under the Bankruptcy Code. *See*, 11 U.S.C. § 541(a)(1) (defining "property of the estate" as "all legal *or* equitable interests of the debtor in property") (emphasis added); § 541(a)(2) ("property of the estate" includes "all interests of the debtor and the debtor's spouse in community property ... that is—(A) under the sole, equal, or joint management and control of the debtor.") [16]

In turn, Count XVI seeks turnover of those assets as property of the estate. As § 542 provides that any entity holding property of the estate must turn such property over to Trustee, the result of Count XVI must necessarily follow that of Count XV. Because Trustee has properly pleaded that Debtor holds some interest in assets nominally titled in Mrs. Harman's name, Trustee has properly pleaded a right to turnover of those assets. The extent of Debtor's interest is a factual determination not appropriate at this stage.

Count XVII seeks to avoid, pursuant to § 549(a), any post-petition transfer of those assets, along with the December 2012 Sale Proceeds and the Held–Back Funds. As previously discussed, in order to avoid post-petition transfers under § 549(a), Trustee must assert that (1) the transferred property is property of the estate, (2) the transfer occurred after commencement of the case, and (3) the transfer was not authorized by the Court or Title 11, or was authorized only under § 303(f) or 542(c). As in Count III, the pattern of conduct alleged in the Complaint is enough to "raise a reasonable

---

**16.** In perhaps the most common example, a debtor's house will become property of the estate notwithstanding a security deed through which a lender holds legal title to that house.

expectation" that discovery will reveal evidence of transfers from Mrs. Harman to other Defendants. Pursuant to that evidence, Trustee would be able to recover the value of such transfers from the initial, immediate, or mediate transferees, or the entities for whose benefit such transfers were made under § 550; thus, dismissal is inappropriate for Counts XV through XVIII.

### J. Counts XIX, XX, and XXI

In Counts XIX, XX, and XXI, Trustee seeks to avoid the transfer of NRV Funds away from the estate, and recover the value of that transfer. In Count XIX, Trustee seeks avoidance under § 548(a)(1)(A), for which Trustee must allege that Debtor had an interest in the property transferred, that the transfer occurred within two years prior to the date of the petition, and that Debtor made such transfer with the actual intent to hinder, delay, or defraud creditors. In Count XX, Trustee seeks avoidance under § 548(a)(1)(B), for which Trustee must allege that Debtor had an interest in the property transferred, that the transfer occurred within two years prior to the date of the petition, that Debtor did not receive reasonably equivalent value for the transfer, and that Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. In Count XXI, Trustee seeks to recover the value of the transfer from Shadrix under § 550, for which Trustee must allege that the transfer may be avoided under, *inter alia*, § 548, and that Shadrix is the initial, immediate, or mediate transferee of the transfer, or the entity for whose benefit the transfer was made.

As a threshold matter, Trustee has plausibly alleged that Debtor had an interest in the NRV Funds. According to Trustee, Debtor was a limited partner of New River Valley, with a 3.56% ownership interest. In turn, New River Valley was one of five entities that owned various parts of the real estate making up the sale of Terrace View. Thus, Trustee alleges, Debtor was entitled to the NRV Funds by virtue of his interest in New River Valley.

Trustee has properly alleged that the transfer of NRV Funds occurred within two years of the Petition Date. Trustee alleges the transfer of NRV Funds to Shadrix occurred May 25, 2011. The petition initiating the underlying case was filed June 14, 2011; therefore, the transfer occurred in the two years prior to the Petition Date.

In support of avoidance under § 548(a)(1)(A), Trustee alleges that the funds were transferred to Shadrix to avoid garnishment by McAfee. An attempt to avoid a garnishment action shows a clear intent to hinder the efforts of a creditor. Thus, Trustee's allegations, taken as true, properly state a claim for relief under § 548(a)(1)(A).

In support of avoidance under § 548(a)(1)(B), Trustee alleges that Debtor was insolvent at the time of the transfer or as a result of the transfer. Trustee points to the fact that Debtor made the transfer "merely weeks prior to the filing of this Bankruptcy Case." Taking the allegations as true, the Complaint raises a reasonable expectation that discovery might uncover evidence of Debtor's insolvency at the time the transfer was made. Trustee also alleges that the transfer was made for no consideration. Zero consideration is, of course, "less than reasonably equivalent value" for the transfer of hundreds of thousands of dollars. Accordingly, it appears that Trustee has sufficiently pleaded the elements of avoidance under § 548(a)(1)(B).

To recover the transfer of NRV Funds under § 550, having properly pleaded

avoidance of the transfer under § 548, Trustee need only allege that a Defendant was the initial, immediate, or mediate transferee of the NRV Funds, or the entity for whose benefit the transfer was made. As Trustee has alleged that the NRV Funds were transferred to Shadrix, and part of the funds were subsequently transferred to Smith Conerly, Trustee has stated a plausible claim to recover from Shadrix or Smith Conerly as initial, immediate, or mediate transferees, or as entities for whose benefit the transfers were made. Trustee's allegations taken as a whole suffice to raise the reasonable expectation that discovery will reveal subsequent transfers, the recipients of which might also be subject to recovery as mediate transferees, or as the entities for whose benefit the transfers were made.

### K. Count XXIV

In Count XXIV, Trustee seeks an accounting from all Defendants of the various assets Trustee asserts are properly considered property of the bankruptcy estate. Because Trustee has sufficiently pleaded that he is entitled to recover property of various non-Debtor entities as property of the estate, an accounting is appropriate to the extent any Defendant holds property that might be declared property of the estate.

### Conclusion

For the reasons stated above, Trustee has properly pleaded the elements of each claim raised against Non–Debtor Movants. Accordingly, it is hereby

**ORDERED** that the Motions are *denied.*

IT IS SO ORDERED.